# Exhibit B

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| **NICHOLAS USLER, ET AL.,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **vs.** | )           **Civ. Action No. 1:21-CV-00447-RP** |
| | ) |
| **VITAL FARMS, INC.,** | ) |
| | ) |
| **Defendant.** | ) |

<u>**NONPARTY PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC.'S**</u>
<u>**OBJECTIONS TO VITAL FARMS, INC.'S NONPARTY SUBPOENA**</u>

Pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure, nonparty People for the Ethical Treatment of Animals, Inc. ("PETA"), by and through undersigned counsel, serves its Objections to the Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action issued by Defendant Vital Farms, Inc. ("Vital Farms" or "Defendant") dated November 18, 2022 (with all attachments, the "Subpoena"), in connection with the lawsuit *Nicholas Usler, et al. v. Vital Farms, Inc*, Case No. 1:21-cv-00447 (W.D. Tex.). (the "Case").  The Subpoena seeks irrelevant materials not reasonably calculated to lead to the discovery of admissible evidence; is overbroad and unduly burdensome; appears to be served for the improper purpose of targeting another client of certain counsel for Plaintiffs in the above-captioned matter, the Foundation to Support Animal Protection d/b/a PETA Foundation, as retribution for that counsel's provision of legal services to Plaintiffs; and inappropriately seeks confidential information about an animal protection organization's advocacy activities and strategies which are irrelevant to the legal issues in the Case.

Federal Rule of Civil Procedure 45 imposes a duty upon Vital Farms and Vital Farms counsel to "take reasonable steps to avoid imposing undue burden or expense" on a nonparty.  Fed.

1

R. Civ. P. 45(d)(1).  Vital Farms and Vital Farms counsel may be subject to sanction, including reasonable attorney's fees, for failure to abide that duty.  *Id*.  This Subpoena is inappropriate and impermissible under Federal Rules of Civil Procedure 26 and 45.  PETA again requests that Vital Farms voluntarily withdraw the Subpoena.

Because Vital Farms and Vital Farms' counsel, in issuing the Subpoena, have not taken reasonable steps to avoid imposing undue burden or expense on PETA, Vital Farms and Vital Farms counsel risk liability for sanctions, including the reasonable attorney's fees PETA has incurred and will need to incur in responding to this improper Subpoena, as provided in Rule 45(d)(1).  PETA reserves the right to seek these fees.

## PRELIMINARY OBJECTIONS

1.      PETA objects to the Subpoena on the basis that it seeks material irrelevant to the issues in the Case.  In the Case, Plaintiffs allege that Defendant egg seller misrepresents its products and treatment of its egg-laying hens as "humane" and "ethical" while it engages in numerous inhumane practices that subject its animals to unnecessary pain and death.  *See, e.g.*, Dkt. 1 at ¶¶ 2–6, 39; Dkt. 26 at 1–2.  Plaintiffs identify the practices utilized by Defendant that Plaintiffs allege are inhumane, including, *e.g.*: selling prematurely "spent" hens for slaughter by gruesome means; condoning beak "trimming"; and maceration (killing) of live male chicks.  *See, e.g.*, Dkt. 1 at ¶ 43; Dkt. 26 at 2.  Plaintiffs also allege that Defendant claims its hens are "pasture raised" while in reality its hens are kept at extreme confinement density, denying meaningful access to outdoor space and causing further undue pain.  *See, e.g.*, Dkt. 1 at ¶ 46; Dkt. 26 at 2.  In response, Defendant took the position that its statements regarding the animals' alleged humane and pasture-raised treatment conform to the standards of a third-party certifier Humane Farm Animal Care, Dkt. 26 at 6–7; that its statements are not actionable because they are vague,

aspirational, or opinions, Dkt. 26 at 8; and that its depicted image of hens on a green pasture is "plainly true" because it was not alleged not to be of a Vital Farms hen pasture, Dkt. 26 at 6. Therefore, the issues in the Case, as alleged in the parties' claims and defenses, include, *e.g.*, (i) whether Defendant made the alleged representations of "humane" treatment; (ii) the conduct and treatment of hens by Defendant and/or its suppliers; (iii) whether that treatment is "humane," a term that Plaintiffs allege is defined under relevant caselaw, Dkt. 22 at 13–14, Dkt. 26 at 8–9, and that Defendant alleges is defined by its third-party certifier HFAC, Dkt. 17 at 4–5, Dkt. 26 at 7; and (iv) whether Plaintiffs and consumers purchasing Defendant's products have been deceived by those representations.  The Subpoena seeks no information relevant to these claims and defenses; instead, it seeks information about PETA's general advocacy efforts.  The Subpoena does not seek documents or materials that "ha[ve] any tendency to make a fact" "of consequence in determining the action" "more or less probable than it would be without the evidence," Fed. R. Evid. 401(a)–(b), nor is the Subpoena reasonably calculated to lead to the discovery of admissible evidence.  It therefore fails to comply with Federal Rules of Civil Procedure 26 and 45.  Moreover, "[n]on-parties have a different set of expectations" than parties to a suit for purposes of discovery; "concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating" the appropriateness of a discovery request.  *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998); *see also Gilmore v. Jones*, 339 F.R.D. 111, 120 (W.D. Va. 2021) ("when a subpoena is directed to a nonparty, 'courts must give the recipient's nonparty status 'special weight,' leading to an even more 'demanding and sensitive' inquiry than the one governing discovery generally.'").

2.      PETA objects to the Subpoena on the basis that Defendant issued the Subpoena to harass and/or cause annoyance, oppression, and undue burden.  At counsels' meet and confer on

November 17, 2022,[1] counsel for Defendant stated that a reason the Subpoena was relevant to the Case is because, according to Defendant's counsel, PETA is 'affiliated' with Foundation to Support Animal Protection d/b/a/ PETA Foundation, one of the counsel for Plaintiffs in the Case. A Subpoena targeting an entity due to its alleged affiliation with *opposing counsel* is an improper attempt to harass, annoy, oppress, and burden that entity, in retribution for opposing counsel's legitimate participation in the legal process.

3.      PETA objects to this Subpoena on the basis that it improperly harasses, annoys, oppresses, and unduly burdens PETA to seek confidential information related to its advocacy that is irrelevant to the Case.  Defendant is an egg producer, and PETA is an animal protection organization.  Defendant's Subpoena seeks various records and documents related to PETA's advocacy efforts, under the aegis of a Case to which PETA is not a party, seeking information that is not relevant to that lawsuit but instead directed at revealing PETA's advocacy efforts and strategy.  It is an improper and pretextual attempt to peer "behind the curtain" at confidential documents and strategy of the type of advocacy organization that Defendant has identified as a critical corporate adversary.  *See, e.g.*, Vital Farms, Annual Report (Form 10-K) (March 10, 2022) ("[W]e and many of our customers face pressure from animal rights groups to require all companies that supply food products to operate their business in a manner that treats animals in conformity with certain standards developed or approved by these animal rights groups.  If consumer preferences shift away from animal-based products for these reasons, because of a preference for plant-based products or otherwise, our business, financial condition and results of operations could be adversely affected."); *see also Usler v. Vital Farms, Inc.*, Case No. 1:21-cv-

---

[1] This meet and confer concerned a prior subpoena, which was later withdrawn prior to being formally served.  That subpoena contained identical definitions and document requests, but a different requested place of compliance.

4

00447, Dkt. 56-1, at 10 (W.D. Tex. Nov. 22, 2022) (referring to PETA as "a competitor" that is "in active competition to reduce Vital Farms' market share" because PETA engages in core First Amendment-protected advocacy regarding the consumption of animal products).   PETA is a nonprofit organization whose advocacy efforts the Subpoena targets are protected by the First Amendment. *See New York Times Co. v. Sullivan*, 376 U.S. 254, 266 (1964) (an advertisement constituted pure speech where it "communicated information, expressed opinion, recited grievances, protested claimed abuses, and sought financial support on behalf of a movement whose existence and objectives are matters of the highest public interest and concern").

4.     PETA objects to the Subpoena on the basis that it seeks confidential information about PETA Foundation's strategies and tactics, which information is irrelevant to the Case and disclosure of which information is not proportional to the needs of the Case.

5.     PETA objects to the Subpoena on the basis that it is overly broad and unduly burdensome, taking into account the needs of the case, and is otherwise not proportional to the needs of the case, particularly as to PETA, which is a nonparty to this action.  The requested topics do not seek information tailored to the issues in the Case, but instead seek a broad and wide-ranging set of materials unrelated to those issues. This Subpoena would require PETA to expend significant time, personnel, and other resources searching for, reviewing, and identifying documents related to or among a wide range of topics, including but not limited to unrelated communications with its employees, members, and supporters, as well as its fundraising, research, and investigative activities—essentially, all aspects of its wide-ranging vegan advocacy.

6.     PETA objects to the Subpoena on the basis that it seeks information protected by the First Amendment concerning individuals engaged in advocacy, including PETA employees, members, supporters, or other affiliates, to the extent they may have information related to or

otherwise implicated by topics requested in the Subpoena.  *See Nat'l Ass'n for Advancement of Colored People v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 462 (1958) ("It is hardly a novel perception that compelled disclosure of affiliation with groups engaged in advocacy may constitute as effective a restraint on freedom of association as the forms of governmental action in the cases above were thought likely to produce upon the particular constitutional rights there involved.  This Court has recognized the vital relationship between freedom to associate and privacy in one's associations.")

7.     PETA objects to the Definition of "YOU," "YOUR," AND "PETA" as overly broad, unduly burdensome, and seeking information or documents that are neither relevant to the issues in the Case nor reasonable calculated to lead to the discovery of admissible evidence.  PETA further objects to the definition as overly broad and unduly burdensome in that it specifically defines these terms to include multiple entities without explanation as to how any of these entities would likely have information relevant to the issues in the Case.  PETA further objects to the definition as overly broad and unduly burdensome in that it specifically claims to include the PETA Foundation, which is not a legal affiliate of PETA; to which Defendant has already issued a separate Subpoena; and which entity is only allegedly related to the Case in that it serves as counsel to Plaintiffs, and its targeting by Subpoena is therefore improper.  Discovery propounded upon an opposing counsel is particularly suspect and subject to heightened judicial scrutiny.  *See Allen v. Brown Advisory, LLC*, No. CV 3:20-MC-00008, 2020 WL 5603760, at *2 (W.D. Va. Sept. 17, 2020) (stating "[w]hen discovery is sought from counsel for an opposing party, additional threshold considerations come into play," and applying heightened standard of review).

8.     PETA objects to the Definition of "DOCUMENT" as overly broad and unduly burdensome, and as seeking information or documents that are neither relevant to the issues in the

Case nor reasonable calculated to lead to the discovery of admissible evidence; including but not limited to because it defines this term to include a wide range of items, including *e.g.* "recordings of conversations either in writings or upon any mechanical or electrical recording devices, notes, papers, reports, analyses, invoices, canceled checks or check stubs, receipts, minutes of meetings, time sheets, diaries, desk calendars, ledgers, schedules, licenses, financial statements, telephone bills, [and] logs…"  The wide-ranging categories of materials sought under the Definition of this term are not aimed at "avoid[ing] imposing undue burden or expense" on this nonparty, Fed. R. Civ. P. 45(d)(1), but rather increase the burden and expense of compliance.

9.     These Preliminary Objections are applicable to and incorporated by reference in each of PETA's objections and responses herein, as if specifically and fully set forth therein.  The stating of specific objections to a particular request shall not be construed as a waiver of PETA's Preliminary Objections.   Additionally, unless otherwise specified, PETA's objections to the Subpoena and each request therein apply to the entirety of each request to which the objection is made.

10.     PETA reserves the right to object to future discovery requests on the same or related matters, and does not waive any objections, arguments, or defenses by providing these responses.

11.     PETA reserves the right to assert additional objections and to supplement, modify or amend these responses.

## SPECIFIC OBJECTIONS TO REQUESTED DOCUMENTS DESIGNATED FOR PRODUCTION

1.     All DOCUMENTS and COMMUNICATIONS concerning, constituting, or reflecting any tactics or strategies YOU have employed, participated in, or provided assistance in to dissuade consumers from buying or eating EGGS.

**RESPONSE:** In addition to the Preliminary Objections, PETA objects to this request as irrelevant because it is not reasonably calculated to lead to discovery of admissible evidence in the Case. The "tactics or strategies" used by a nonparty advocacy organization to "dissuade consumers from buying or eating EGGS" are not relevant to the Case. The Case concerns allegations that Defendant utilizes specified inhumane practices and misrepresents the treatment of its hens in advertising its products. PETA's "tactics or strategies" to "dissuade consumers from buying or eating EGGS" are not relevant to any of the issues in the Case, as noted *supra* Preliminary Objection 1. For instance, this request would provide no information regarding what representations Defendant has made; what specific practices Defendant has engaged in with respect to its hens; whether Defendant's practices correspond to its representations, under the definitions set forth by either Defendant or Plaintiffs in the Case; and whether Plaintiffs were deceived by those representations. PETA further objects that this request is overbroad, unduly burdensome, not proportionate to the needs of the case, and calls for the production of documents not relevant to the Case in that it seeks materials with no limitation as to applicable time period or geographic scope. PETA further objects that this request is overbroad, unduly burdensome, not proportionate to the needs of the case, and calls for the production of documents not relevant to the Case in that it seeks "All DOCUMENTS and COMMUNICATIONS concerning, constituting, or reflecting" the tactics or strategies. PETA further objects that this request is vague and ambiguous with respect to its use of the term "provided assistance." PETA further objects to the extent that Defendant seeks publicly available statements or communications by PETA regarding "dissuad[ing] consumers from buying or eating EGGS," because these materials are publicly available by other means, and demanding their production by PETA "impos[es] undue burden or expense on" PETA under Fed. R. Civ. P. 45(d)(1). PETA further objects that this request is unduly

8

burdensome, in that it requests the significant expenditure of PETA's time and resources, including personnel resources, to search through essentially all files associated with PETA's vegan advocacy, and would require PETA to incur the expense of ascertaining the existence of, reviewing and producing those files, which burden is not proportional to the needs of the case because the request is not reasonably calculated to lead to the discovery of relevant admissible evidence.  PETA further objects that this request, in seeking, among other categories, confidential information regarding PETA's advocacy "tactics or strategies," is interposed to harass, annoy, oppress, and unduly burden a nonparty Defendant has identified on the basis of either or both its alleged affiliation with opposing counsel or status as a critical corporate adversary, as noted *supra* Preliminary Objections 2-4.  PETA further objects that this request seeks information protected by PETA's privacy interests and by the First Amendment, including materials concerning PETA's internal communications, strategies, and advocacy work to dissuade consumers from buying or consuming eggs, and materialss concerning individual PETA employees, members, supporters, or other affiliates, to the extent they have engaged with or been engaged by PETA's vegan advocacy regarding the egg industry, in its demand for PETA's advocacy "tactics or strategies" with respect to dissuading consumers from buying or consuming eggs.  *See supra* Preliminary Objection 6; *Nat'l Ass'n for Advancement of Colored People*, 357 U.S. at 462.  PETA further objects that this request calls for the production of documents that are protected by the attorney-client privilege and work-product doctrine, as PETA has been party to lawsuits related to animal protection, including farm animal protection, and this broad request risks sweeping in protected, privileged materials related to PETA's legal efforts.

2.      All DOCUMENTS and COMMUNICATIONS concerning, constituting, or reflecting any studies YOU have conducted, funded, participated in, or provided assistance in to dissuade consumers from buying or eating EGGS.

**RESPONSE:** In addition to the Preliminary Objections, PETA objects to this request as irrelevant because it is not reasonably calculated to lead to discovery of admissible evidence in the Case. "[A]ny studies" "conducted, funded, participated in, or . . . assist[ed]" by a nonparty advocacy organization to "dissuade consumers from buying or eating EGGS" are not relevant to the Case, let alone any documents or communications not constituting, reflecting, or concerning those studies.   PETA's documents or communications concerning studies to "dissuade consumers from buying or eating EGGS" are not relevant to any of the issues in the Case, as noted *supra* Preliminary Objection 1.  For instance, this request would provide no information regarding what representations Defendant has made; what specific practices Defendant has engaged in with respect to its hens; whether Defendant's practices correspond to its representations, under the definitions set forth by either Defendant or Plaintiffs in the Case; and whether Plaintiffs were deceived by those representations.  PETA further objects that this request is overbroad, unduly burdensome, not proportionate to the needs of the case, and calls for the production of documents not relevant to the Case in that it seeks materials with no limitation as to applicable time period or geographic scope.  PETA further objects that this request is overbroad, unduly burdensome, not proportionate to the needs of the case, and calls for the production of documents not relevant to the Case in that it seeks "All DOCUMENTS and COMMUNICATIONS concerning, constituting, or reflecting" such studies.  PETA further objects that this request is vague and ambiguous with respect to its use of the term "provided assistance."  PETA further objects to the extent that there exist publicly available studies regarding "dissuad[ing] consumers from buying or eating EGGS,"

which materials are publicly available by other means; moreover, to the extent PETA has made public comments regarding such studies, those public comments would also be publicly available by other means; therefore demanding that PETA search its own files to identify such materials, and produce such materials, "impos[es] undue burden or expense on" PETA under Fed. R. Civ. P. 45(d)(1).  PETA further objects that this request is unduly burdensome, in that it requests the significant expenditure of PETA's time and resources, including personnel resources, to ascertain the existence of, search through, review, and produce responsive files, which burden is not proportional to the needs of the case because the request is not reasonably calculated to lead to the discovery of relevant admissible evidence.  PETA further objects that this request, in seeking, among other categories, confidential information regarding PETA's advocacy, is interposed to harass, annoy, oppress, and unduly burden a nonparty Defendant has identified on the basis of either or both its alleged affiliation with opposing counsel or status as a critical corporate adversary, as noted *supra* Preliminary Objections 2-4.  PETA further objects that this request seeks information protected by PETA's privacy interests and by the First Amendment, including materials concerning PETA's internal communications, strategies, and analyses, studies, or surveys contributing to its advocacy work, and materials concerning individual PETA employees, members, supporters, or other affiliates, to the extent they have engaged with or been engaged by PETA's vegan advocacy so much as mentioning any such studies.  *See supra* Preliminary Objection 6; *Nat'l Ass'n for Advancement of Colored People*, 357 U.S. at 462.  PETA further objects that this request calls for the production of documents that are protected by the attorney-client privilege and work-product doctrine, as PETA has been party to lawsuits related to animal protection, including farm animal protection, and this broad request risks sweeping in protected, privileged materials related to PETA's legal efforts.

11

3.      All DOCUMENTS and COMMUNICATIONS concerning, constituting, or reflecting any studies YOU have conducted, funded, participated in, or provided assistance in regarding EGG production.

**RESPONSE:** In addition to the Preliminary Objections, PETA objects to this request as irrelevant because it is not reasonably calculated to lead to discovery of admissible evidence in the Case. "[A]ny studies" "conducted, funded, participated in, or . . . assist[ed]" by a nonparty advocacy organization "regarding EGG production" are not relevant to the Case, let alone any documents or communications constituting, reflecting or concerning those studies.   PETA's documents or communications concerning studies to "regarding EGG production" are not relevant to any of the issues in the Case, as noted *supra* Preliminary Objection 1.   For instance, this request would provide no information regarding what representations Defendant has made; what specific practices Defendant has engaged in with respect to its hens; whether Defendant's practices correspond to its representations, under the definitions set forth by either Defendant or Plaintiffs in the Case; and whether Plaintiffs were deceived by those representations.   PETA further objects that this request is overbroad, unduly burdensome, not proportionate to the needs of the case, and calls for the production of documents not relevant to the Case in that it seeks materials with no limitation as to applicable time period or geographic scope.   PETA further objects that this request is overbroad, unduly burdensome, not proportionate to the needs of the case, and calls for the production of documents not relevant to the Case in that it seeks "All DOCUMENTS and COMMUNICATIONS concerning, constituting, or reflecting" such studies.   PETA further objects that this request is vague and ambiguous with respect to its use of the term "provided assistance." PETA further objects to the extent that there exist publicly available studies "regarding EGG production," which materials are publicly available by other means; moreover, to the extent PETA

has made public comments concerning such studies, those public comments would also be publicly available by other means; therefore demanding that PETA search its own files to identify such materials, and produce such materials, "impos[es] undue burden or expense on" PETA under Fed. R. Civ. P. 45(d)(1). PETA further objects that this request is unduly burdensome in that it requests the significant expenditure of PETA's time and resources, including personnel resources, to ascertain the existence of, search through, review, and produce responsive files, which burden is not proportional to the needs of the case because the request is not reasonably calculated to lead to the discovery of relevant admissible evidence. PETA further objects that this request, in seeking, among other categories, confidential information regarding PETA's advocacy, is interposed to harass, annoy, oppress, and unduly burden a nonparty Defendant has identified on the basis of either or both its alleged affiliation with opposing counsel or status as a critical corporate adversary, as noted *supra* Preliminary Objections 2-4. PETA further objects that this request seeks information protected by PETA's privacy interests and by the First Amendment, including materials concerning PETA's internal communications, strategies, and analyses, studies, or surveys contributing to its advocacy work, and materials concerning individual PETA employees, members, supporters, or other affiliates, to the extent they have engaged with or been engaged by PETA's vegan advocacy so much as mentioning any such studies. *See supra* Preliminary Objection 6; *Nat'l Ass'n for Advancement of Colored People*, 357 U.S. at 462. PETA further objects that this request is unreasonably duplicative of request number 2. PETA further objects that this request calls for the production of documents that are protected by the attorney-client privilege and work-product doctrine, as PETA has been party to lawsuits related to animal protection, including farm animal protection, and this broad request risks sweeping in protected, privileged materials related to PETA's legal efforts.

13

4.      All DOCUMENTS and COMMUNICATIONS concerning, constituting, or reflecting any analyses YOU have conducted, funded, participated in, or provided assistance in concerning consumer preferences regarding EGGS.

**RESPONSE:** In addition to the Preliminary Objections, PETA objects to this request as irrelevant because it is not reasonably calculated to lead to discovery of admissible evidence in the Case. "[A]ny analyses" "conducted, funded, participated in, or . . . assist[ed]" by a nonparty advocacy organization "concerning consumer preferences regarding EGGS" are not relevant to the Case, let alone any documents or communications constituting, reflecting, or concerning those studies. PETA's documents or communications concerning certain studies "concerning consumer preferences regarding EGGS" are not relevant to any of the issues in the Case, as noted *supra* Preliminary Objection 1.  For instance, this request would provide no information regarding what representations Defendant has made; what specific practices Defendant has engaged in with respect to its hens; whether Defendant's practices correspond to its representations, under the definitions set forth by either Defendant or Plaintiffs in the Case; and whether Plaintiffs were deceived by those representations.  PETA further objects that this request is overbroad, unduly burdensome, not proportionate to the needs of the case, and calls for the production of documents not relevant to the Case in that it seeks materials with no limitation as to applicable time period or geographic scope.  PETA further objects that this request is overbroad, unduly burdensome, not proportionate to the needs of the case, and calls for the production of documents not relevant to the Case in that it seeks "All DOCUMENTS and COMMUNICATIONS concerning, constituting, or reflecting" such studies.  PETA further objects that this request is vague and ambiguous with respect to its use of the term "provided assistance." PETA further objects to the extent that there exist publicly available analyses "concerning consumer preferences regarding EGGS," which

14

materials are publicly available by other means; to the extent PETA has made public comments regarding such analyses, those public comments would also be readily available by other means; therefore demanding that PETA search its own files to identify such materials, and produce such materials, "impos[es] undue burden or expense on" PETA under Fed. R. Civ. P. 45(d)(1).  PETA further objects that this request is unduly burdensome in that it requests the significant expenditure of PETA's time and resources, including personnel resources, to ascertain the existence of, search through, review, and produce responsive files, which burden is not proportional to the needs of the case because the request is not reasonably calculated to lead to the discovery of relevant admissible evidence.  PETA further objects that this request, in seeking, among other categories, confidential information regarding PETA's advocacy, is interposed to harass, annoy, oppress, and unduly burden a nonparty Defendant has identified on the basis of either or both its alleged affiliation with opposing counsel or status as a critical corporate adversary, as noted *supra* Preliminary Objections 2-4. PETA further objects that this request seeks information protected by PETA's privacy interests and by the First Amendment, including materials concerning PETA's internal communications, strategies, and analyses, studies, or surveys contributing to its advocacy work, and materials concerning individual PETA employees, members, supporters, or other affiliates, to the extent they have engaged with or been engaged by PETA's vegan advocacy so much as mentioning any such analyses.  *See supra* Preliminary Objection 6; *Nat'l Ass'n for Advancement of Colored People*, 357 U.S. at 462. PETA further objects that this request calls for the production of documents that are protected by the attorney-client privilege and work-product doctrine, as PETA has been party to lawsuits related to animal protection, including farm animal protection, and this broad request risks sweeping in protected, privileged materials related to PETA's legal

efforts.  PETA further objects that this request is unreasonably duplicative of request numbers 2 and 3.

5.      All DOCUMENTS and COMMUNICATIONS concerning, constituting, or reflecting any studies YOU have conducted, funded, participated in, or provided assistance in regarding consumers' beliefs or preferences about the treatment of chickens.

**RESPONSE:** In addition to the Preliminary Objections, PETA objects to this request as irrelevant because it is not reasonably calculated to lead to discovery of admissible evidence in the Case. "[A]ny studies" "conducted, funded, participated in, or . . . assist[ed]" by a nonparty advocacy organization "regarding consumers' beliefs or preferences about the treatment of chickens" are not relevant to the Case, let alone any documents or communications constituting, reflecting or concerning those studies.  PETA's documents or communications concerning certain studies "regarding consumers' beliefs or preferences about the treatment of chickens" are not relevant to any of the issues in the Case, as noted *supra* Preliminary Objection 1.  For instance, this request would provide no information regarding what representations Defendant has made; what specific practices Defendant has engaged in with respect to its hens; whether Defendant's practices correspond to its representations, under the definitions set forth by either Defendant or Plaintiffs in the Case; and whether Plaintiffs were deceived by those representations.  PETA further objects that this request is overbroad in that it seeks materials with no limitation as to applicable time period or geographic scope.  PETA further objects that this request is overbroad in that it seeks "All DOCUMENTS and COMMUNICATIONS concerning, constituting, or reflecting" such studies.  PETA further objects that this request is vague and ambiguous with respect to its use of the term "provided assistance."  PETA further objects to the extent that there exist publicly available studies "regarding consumers' beliefs or preferences about the treatment of chickens,"

16

which materials are publicly available by other means; to the extent PETA has made public comments regarding such analyses, those public comments would also be readily available by other means; therefore demanding that PETA search its own files to identify such materials, and produce such materials, "impos[es] undue burden or expense on" PETA under Fed. R. Civ. P. 45(d)(1). PETA further objects that this request is unduly burdensome in that it requests the significant expenditure of PETA's time and resources, including personnel resources, to ascertain the existence of, search through, review, and produce responsive files, which burden is not proportional to the needs of the case because the request is not reasonably calculated to lead to the discovery of relevant admissible evidence.  PETA further objects that this request, in seeking, among other categories, confidential information regarding PETA's advocacy, is interposed to harass, annoy, oppress, and unduly burden a nonparty Defendant has identified on the basis of either or both its alleged affiliation with opposing counsel or status as a critical corporate adversary, as noted *supra* Preliminary Objections 2-4. PETA further objects that this request seeks information protected by PETA's privacy interests and by the First Amendment, including materials concerning PETA's internal communications, strategies, and analyses, studies, or surveys contributing to its advocacy work, and materials concerning individual PETA employees, members, supporters, or other affiliates, to the extent they have engaged with or been engaged by PETA's vegan advocacy so much as mentioning any such studies.  *See supra* Preliminary Objection 6; *Nat'l Ass'n for Advancement of Colored People*, 357 U.S. at 462. PETA further objects that this request calls for the production of documents that are protected by the attorney-client privilege and work-product doctrine, as PETA has been party to lawsuits related to animal protection, including farm animal protection, and this broad request risks sweeping in protected,

17

privileged materials related to PETA's legal efforts.  PETA further objects that this request is unreasonably duplicative of request number 4.

      6.     All DOCUMENTS and COMMUNICATIONS concerning, constituting or reflecting any studies YOU have conducted, funded, participated in, or provided assistance in regarding consumers' beliefs or preferences about advertising, marketing, or labeling of EGGS using the terms "ethical" and/or "humane."

**RESPONSE:** In addition to the Preliminary Objections, PETA objects to this request as irrelevant because it is not reasonably calculated to lead to discovery of admissible evidence in the Case. "[A]ny studies" "conducted, funded, participated in, or . . . assist[ed]" by a nonparty advocacy organization "regarding consumers' beliefs or preferences about advertising, marketing, or labeling of EGGS using the terms 'ethical' and/or 'humane'" are not relevant to the Case, let alone any documents or communications constituting, reflecting or concerning those studies.  The Case concerns allegations that Defendant utilizes specified inhumane practices and misrepresents the treatment of its hens in advertising its products.   PETA's documents or communications concerning certain studies "regarding consumers' beliefs or preferences about advertising, marketing, or labeling of EGGS using the terms 'ethical' and/or 'humane'" are not relevant to any of the issues in the Case, as noted *supra* Preliminary Objection 1.  For instance, this request would provide no information regarding what representations Defendant has made; what specific practices Defendant has engaged in with respect to its hens; whether Defendant's practices correspond to its representations, under the definitions set forth by either Defendant or Plaintiffs in the Case; and whether Plaintiffs were deceived by those representations.   In the Case, both Plaintiffs and Defendant allege specific meaning to the term "humane," *see* Dkt. 26 at 6–7, and neither definition cites nor references alleged PETA-supported studies.  PETA further objects that

this request is overbroad, unduly burdensome, not proportionate to the needs of the case, and calls for the production of documents not relevant to the Case in that it seeks materials with no limitation as to applicable time period or geographic scope.  PETA further objects that this request is overbroad, unduly burdensome, not proportionate to the needs of the case, and calls for the production of documents not relevant to the Case in that it seeks "All DOCUMENTS and COMMUNICATIONS concerning, constituting, or reflecting" such studies.  PETA further objects that this request is vague and ambiguous with respect to its use of the term "provided assistance." PETA further objects to the extent that there exist publicly available studies "regarding consumers' beliefs or preferences about advertising, marketing, or labeling of EGGS using the terms 'ethical' and/or 'humane'" which materials are publicly available by other means; to the extent PETA has made public comments regarding such analyses, those public comments would also be readily available by other means; therefore demanding that PETA search its own files to identify such materials, and produce such materials, "impos[es] undue burden or expense on" PETA under Fed. R. Civ. P. 45(d)(1).  PETA further objects that this request is unduly burdensome in that it requests the significant expenditure of PETA's time and resources, including personnel resources, to ascertain the existence of, search through, review, and produce responsive files, which burden is not proportional to the needs of the case because the request is not reasonably calculated to lead to the discovery of relevant admissible evidence.  PETA further objects that this request, in seeking, among other categories, confidential information regarding PETA's advocacy, is interposed to harass, annoy, oppress, and unduly burden a nonparty Defendant has identified on the basis of either or both its alleged affiliation with opposing counsel or status as a critical corporate adversary, as noted *supra* Preliminary Objections 2-4. PETA further objects that this request seeks information protected by PETA's privacy interests and by the First Amendment, including

19

materials concerning PETA's internal communications, strategies, and analyses, studies, or surveys contributing to its advocacy work, and materials concerning individual PETA employees, members, supporters, or other affiliates, to the extent they have engaged with, or been engaged by, PETA's vegan advocacy so much as mentioning any such studies.  *See supra* Preliminary Objection 6; *Nat'l Ass'n for Advancement of Colored People*, 357 U.S. at 462.  PETA further objects that this request calls for the production of documents that are protected by the attorney-client privilege and work-product doctrine, as PETA has been party to lawsuits related to animal protection, including farm animal protection, and this broad request risks sweeping in protected, privileged materials related to PETA's legal efforts.

7.     All DOCUMENTS and COMMUNICATIONS concerning, constituting, or reflecting any analyses, studies, or surveys YOU have conducted, funded, participated in, or provided assistance in concerning EGG pricing in the United States.

**RESPONSE:** In addition to the Preliminary Objections, PETA objects to this request as irrelevant because it is not reasonably calculated to lead to discovery of admissible evidence in the Case. "[A]ny analyses, studies, or surveys" "conducted, funded, participated in, or . . . assist[ed]" by a nonparty advocacy organization "concerning EGG pricing in the United States" are not relevant to the Case, let alone any documents or communications constituting, reflecting or concerning those studies.  PETA's documents or communications concerning certain studies or analysis "concerning EGG pricing in the United States" are not relevant to any of the issues in the Case, as noted *supra* Preliminary Objection 1.  For instance, this request would provide no information regarding what representations Defendant has made; what specific practices Defendant has engaged in with respect to its hens; whether Defendant's practices correspond to its representations, under the definitions set forth by either Defendant or Plaintiffs in the Case; and

whether Plaintiffs were deceived by those representations.  PETA further objects that this request is overbroad, unduly burdensome, not proportionate to the needs of the case, and calls for the production of documents not relevant to the Case in that it seeks materials with no limitation as to applicable time period.  PETA further objects that this request is overbroad, unduly burdensome, not proportionate to the needs of the case, and calls for the production of documents not relevant to the Case in that it seeks "All DOCUMENTS and COMMUNICATIONS concerning, constituting, or reflecting" such analyses or studies.  PETA further objects that this request is vague and ambiguous with respect to its use of the term "provided assistance."  PETA further objects to the extent that there exist publicly available analyses or studies "concerning EGG pricing in the United States," which materials are publicly available by other means; to the extent PETA has made public comments regarding such analyses, those public comments would also be readily available by other means; therefore demanding that PETA search its own files to identify such materials, and produce such materials, "impos[es] undue burden or expense on" PETA under Fed. R. Civ. P. 45(d)(1).  PETA further objects that this request is unduly burdensome in that it requests the significant expenditure of PETA's time and resources, including personnel resources, to ascertain the existence of, search through, review, and produce responsive files, which burden is not proportional to the needs of the case because the request is not reasonably calculated to lead to the discovery of relevant admissible evidence.  PETA further objects that this request, in seeking, among other categories, confidential information regarding PETA's advocacy, is interposed to harass, annoy, oppress, and unduly burden a nonparty Defendant has identified on the basis of either or both its alleged affiliation with opposing counsel or status as a critical corporate adversary, as noted *supra* Preliminary Objections 2-4.  PETA further objects that this request seeks information protected by PETA's privacy interests and by the First Amendment, including

materials concerning PETA's internal communications, strategies, and analyses, studies, or surveys contributing to its advocacy work, and materials concerning individual PETA employees, members, supporters, or other affiliates, to the extent they have engaged with or been engaged by PETA's vegan advocacy so much as mentioning any such analyses, studies, or surveys. *See supra* Preliminary Objection 6; *Nat'l Ass'n for Advancement of Colored People*, 357 U.S. at 462. PETA further objects that this request calls for the production of documents that are protected by the attorney-client privilege and work-product doctrine, as PETA has been party to lawsuits related to animal protection, including farm animal protection, and this broad request risks sweeping in protected, privileged materials related to PETA's legal efforts.

8.      All DOCUMENTS and COMMUNICATIONS concerning VITAL FARMS.

**RESPONSE:** In addition to the Preliminary Objections, PETA objects to this request as irrelevant because it is not reasonably calculated to lead to discovery of admissible evidence in the Case. A nonparty advocacy organization's documents and communications about Defendant have no bearing on the issues in the Case, which were described *supra* at Preliminary Objection 1. PETA is not a Plaintiff in the Case. To the extent this request seeks documents and communications from Foundation to Support Animals d/b/a PETA Foundation, this request is improper on the basis that it calls for documents, including counsel's documents and communications about Defendant, including counsel's litigation file, that are both irrelevant for the reasons described above and protected from disclosure by the work product doctrine and/or the attorney client privilege or are otherwise protected from discovery disclosure under the Federal Rules of Civil Procedure, the Federal Rules of Evidence, or other relevant case law or statutory law. To the extent this request seeks documents and communications from Foundation to Support Animals d/b/a PETA Foundation, this request would be subject to heightened scrutiny as a discovery request

propounded upon opposing counsel, since discovery of opposing counsel is disfavored.  Moreover, PETA further objects that this request is overbroad, unduly burdensome, not proportionate to the needs of the case, and calls for the production of documents not relevant to the Case in that it seeks materials with no limitation as to applicable time period.  PETA further objects that this request is unduly burdensome in that it requests the significant expenditure of PETA's time and resources, including personnel resources, to ascertain the existence of, search through, review, and produce responsive files, which burden is not proportional to the needs of the case because the request is not reasonably calculated to lead to the discovery of relevant admissible evidence.  PETA further objects that this request, in seeking, among other categories, confidential information regarding PETA's advocacy specifically concerning Vital Farms, is interposed to harass, annoy, oppress, and unduly burden a nonparty Defendant has identified on the basis of not only its alleged affiliation with opposing counsel but also its status as a critical corporate adversary, as noted *supra* Preliminary Objections 2-4. PETA further objects that this request seeks information protected by PETA's privacy interests and by the First Amendment, including materials concerning individual PETA employees, members, supporters, or other affiliates, to the extent they have engaged with, or been engaged by, any of PETA's vegan advocacy that may have so much as mentioned Vital Farms.  *See supra* Preliminary Objection 6; *Nat'l Ass'n for Advancement of Colored People*, 357 U.S. at 462.

9.     All DOCUMENTS and COMMUNICATIONS concerning, constituting, or reflecting farm conditions for raising HENS for the purposes of EGG production in the United States.

**RESPONSE:** In addition to the Preliminary Objections, PETA objects to this request as irrelevant because it is not reasonably calculated to lead to discovery of admissible evidence in the Case.

PETA's documents and communications about the farm conditions for raising hens for the purposes of the egg production in the United States are not relevant to any of the issues in the Case, as noted *supra* Preliminary Objection 1. For instance, this request would provide no information regarding what representations Defendant has made; what specific practices Defendant has engaged in with respect to its hens; whether Defendant's practices correspond to its representations, under the definitions set forth by either Defendant or Plaintiffs in the Case; and whether Plaintiffs were deceived by those representations. PETA further objects that this request is overbroad, unduly burdensome, not proportionate to the needs of the case, and calls for the production of documents not relevant to the Case in that it seeks materials with no limitation as to applicable time period. PETA further objects that this request is overbroad, unduly burdensome, not proportionate to the needs of the case, and calls for the production of documents not relevant to the Case in that it seeks "All DOCUMENTS and COMMUNICATIONS concerning, constituting, or reflecting" such analyses or studies. PETA further objects to the extent that Defendant seeks information, such as PETA's position on the conditions for raising hens for eggs in the United States, that are publicly available on PETA's website; by demanding an alternate production of PETA's internal documents, without specifying why publicly available information is insufficient for Defendants' purposes, Defendant "impos[es] undue burden or expense on" PETA under Fed. R. Civ. P. 45(d)(1). PETA further objects that this request is unduly burdensome in that it requests the significant expenditure of PETA's time and resources, including personnel resources, to search through essentially all files associated with PETA's vegan advocacy, and would require PETA to incur the expense of ascertaining the existence of, reviewing and producing those files, which burden is not proportional to the needs of the case because the request is not reasonably calculated to lead to the discovery of relevant admissible evidence. PETA further

objects that this request, in seeking, among other categories, confidential information regarding PETA's advocacy, is interposed to harass, annoy, oppress, and unduly burden a nonparty Defendant has identified on the basis of either or both its alleged affiliation with opposing counsel or status as a critical corporate adversary, as noted *supra* Preliminary Objections 2-4. PETA further objects that this request seeks information protected by PETA's privacy interests and by the First Amendment, including materials concerning PETA's internal communications, strategies, and advocacy work regarding the egg industry and conditions for raising hens, and materials concerning individual PETA employees, members, supporters, or other affiliates, to the extent they have engaged with or been engaged by PETA's vegan advocacy regarding the egg industry and conditions for raising hens.  *See supra* Preliminary Objection 6; *Nat'l Ass'n for Advancement of Colored People*, 357 U.S. at 462.  PETA further objects that this request calls for the production of documents that are protected by the attorney-client privilege and work-product doctrine, as PETA has been party to lawsuits related to animal protection, including farm animal protection, and this broad request risks sweeping in protected, privileged materials related to PETA's legal efforts.

10.     All DOCUMENTS and COMMUNICATIONS concerning, constituting, or reflecting HATCHERY conditions in the United States.

**RESPONSE:** In addition to the Preliminary Objections, PETA objects to this request as irrelevant because it is not reasonably calculated to lead to discovery of admissible evidence in the Case. PETA's documents and communications about hatchery conditions in the United States are not relevant to any of the issues in the Case, as noted *supra* Preliminary Objection 1.  For instance, this request would provide no information regarding what representations Defendant has made; what specific practices Defendant has engaged in with respect to its hens; whether Defendant's

practices correspond to its representations, under the definitions set forth by either Defendant or Plaintiffs in the Case; and whether Plaintiffs were deceived by those representations. PETA further objects that this request is overbroad, unduly burdensome, not proportionate to the needs of the case, and calls for the production of documents not relevant to the Case in that it seeks materials with no limitation as to applicable time period. PETA further objects that this request is overbroad, unduly burdensome, not proportionate to the needs of the case, and calls for the production of documents not relevant to the Case in that it seeks "All DOCUMENTS and COMMUNICATIONS concerning, constituting, or reflecting" such analyses or studies. PETA further objects to the extent that Defendant seeks information, such as PETA's position on hatchery conditions in the United States, that are publicly available on PETA's website; by demanding an alternate production of PETA's internal documents, without specifying why publicly available information is insufficient for Defendants' purposes, Defendant "impos[es] undue burden or expense on" PETA under Fed. R. Civ. P. 45(d)(1). PETA further objects that this request is unduly burdensome in that it requests the significant expenditure of PETA's time and resources, including personnel resources, to search through essentially all files associated with PETA's vegan advocacy, and would require PETA to incur the expense of ascertaining the existence of, reviewing and producing those files, which burden is not proportional to the needs of the case because the request is not reasonably calculated to lead to the discovery of relevant admissible evidence. PETA further objects that this request, in seeking, among other categories, confidential information regarding PETA's advocacy, is interposed to harass, annoy, oppress, and unduly burden a nonparty Defendant has identified on the basis of either or both its alleged affiliation with opposing counsel or status as a critical corporate adversary, as noted *supra* Preliminary Objections 2-4. PETA further objects that this request seeks information protected by PETA's privacy interests and by the First Amendment,

including materials concerning PETA's internal communications, strategies, and advocacy work regarding the egg industry and hatchery conditions, and materials concerning individual PETA employees, members, supporters, or other affiliates, to the extent they have engaged with, or been engaged by, PETA's vegan advocacy regarding the egg industry and hatchery conditions. *See supra* Preliminary Objection 6; *Nat'l Ass'n for Advancement of Colored People*, 357 U.S. at 462. PETA further objects that this request calls for the production of documents that are protected by the attorney-client privilege and work-product doctrine, as PETA has been party to lawsuits related to animal protection, including farm animal protection, and this broad request risks sweeping in protected, privileged materials related to PETA's legal efforts.

11.     All DOCUMENTS and COMMUNICATIONS concerning, constituting, or reflecting the use of CULLING or BEAK TRIMMING in the EGG production industry in the United States.

**RESPONSE:** In addition to the Preliminary Objections, PETA objects to this request as irrelevant because it is not reasonably calculated to lead to discovery of admissible evidence in the Case. PETA's documents and communications about the practices of culling and of beak trimming in the egg production industry in the United States are not relevant to any of the issues in the Case, as noted *supra* Preliminary Objection 1. For instance, this request would provide no information regarding what representations Defendant has made; what specific practices Defendant has engaged in with respect to its hens; whether Defendant's practices correspond to its representations, under the definitions set forth by either Defendant or Plaintiffs in the Case; and whether Plaintiffs were deceived by those representations. PETA further objects that this request is overbroad, unduly burdensome, not proportionate to the needs of the case, and calls for the production of documents not relevant to the Case in that it seeks materials with no limitation as to

applicable time period.  PETA further objects that this request is overbroad, unduly burdensome, not proportionate to the needs of the case, and calls for the production of documents not relevant to the Case broad in that it seeks "All DOCUMENTS and COMMUNICATIONS concerning, constituting, or reflecting" such analyses or studies.  PETA further objects to the extent that Defendant seeks information, such as PETA's position on culling and beak trimming in the United States, that are publicly available on PETA's website; by demanding an alternate production of PETA's internal documents, without specifying why publicly available information is insufficient for Defendants' purposes, Defendant "impos[es] undue burden or expense on" PETA under Fed. R. Civ. P. 45(d)(1).  PETA further objects that this request is unduly burdensome in that it requests the significant expenditure of PETA's time and resources, including personnel resources, to search through essentially all files associated with PETA's vegan advocacy, and would require PETA to incur the expense of ascertaining the existence of, reviewing and producing those files, which burden is not proportional to the needs of the case because the request is not reasonably calculated to lead to the discovery of relevant admissible evidence.  PETA further objects that this request, in seeking, among other categories, confidential information regarding PETA's advocacy, is interposed to harass, annoy, oppress, and unduly burden a nonparty Defendant has identified on the basis of either or both its alleged affiliation with opposing counsel or status as a critical corporate adversary, as noted *supra* Preliminary Objections 2-4.  PETA further objects that this request seeks information protected by PETA's privacy interests and by the First Amendment, including materials concerning PETA's internal communications, strategies, and advocacy work regarding the egg industry and culling and beak-trimming practices, and materials concerning individual PETA employees, members, supporters, or other affiliates, to the extent they have engaged with, or been engaged by, PETA's vegan advocacy regarding the egg industry and culling

and beak-trimming practices.  *See supra* Preliminary Objection 6; *Nat'l Ass'n for Advancement of Colored People*, 357 U.S. at 462.  PETA further objects that this request calls for the production of documents that are protected by the attorney-client privilege and work-product doctrine, as PETA has been party to lawsuits related to animal protection, including farm animal protection, and this broad request risks sweeping in protected, privileged materials related to PETA's legal efforts.


Dated:  December 2, 2022                          /s/ Melissa Alpert
                                                  Melissa Alpert (Pa. I.D. 330638)
                                                  **K&L GATES LLP**
                                                  K&L Gates Center
                                                  210 Sixth Avenue
                                                  Pittsburgh, PA 15222
                                                  P: (412) 355-3779
                                                  F: (412) 355-6501
                                                  melissa.alpert@klgates.com