# Exhibit C

# SheppardMullin

Sheppard Mullin Richter & Hampton LLP
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055
310.228.3700 main
310.228.3701 fax
www.sheppardmullin.com

Abby Meyer
714.424.2811 direct
ameyer@sheppardmullin.com

File Number: 78LK-335128

December 13, 2022

**VIA E-MAIL ONLY**

Melissa Alpert
K&L Gates
210 Sixth Avenue
Pittsburgh, PA 15222
melissa.alpert@klgates.com

Re:     PETA and PETA Foundation's Objections To Subpoenas re *Nicholas Usler, et al. v.*
        *Vital Farms, Inc.*, Civil Case No. 1:21-CV-00447-RP (W.D. Tex.)

Dear Ms. Alpert:

On behalf of defendant Vital Farms, Inc. ("Defendant" or "Vital Farms") in the above-referenced action, we write to initiate meet and confer regarding People for Ethical Treatment of Animals, Inc.'s ("PETA") and Foundation To Support Animal Protection d/b/a/ PETA Foundation's (the "Foundation") December 2, 2022 objections to the subpoenas Defendant served on each organization on November 18, 2022 (the "PETA Subpoena," or "PETA Foundation Subpoena," respectively; or collectively, the "Subpoenas").

## PETA SUBPOENA

Vital Farms' PETA Subpoena included 11 requests for production of documents (the "Requests"). The Requests are summarized as follows:

1)  Documents and communications related to PETA's strategies and/or activities to dissuade consumers from buying or eating eggs;
2)  Documents and communications related to studies that PETA conducted or participated in to dissuade consumers from buying or eating eggs;
3)  Documents and communications related to studies that PETA conducted or participated in regarding egg production;
4)  Documents and communications related to analyses that PETA conducted regarding consumers' preferences regarding eggs;
5)  Documents and communications related to studies PETA conducted or participated in regarding consumers' beliefs or preferences about the treatment of chickens;
6)  Documents and communications related to studies PETA conducted or participated in regarding consumers' beliefs or preferences about eggs marketed or labeled as "ethical" or "humane";
7)  Documents and communications related to analyses or studies PETA conducted regarding the pricing of eggs in the United States;

**Sheppard**Mullin

Melissa Alpert
December 13, 2022
Page 2

8)  Documents and communications related to Vital Farms;
9)  Documents and communications related to farm conditions for raising hens for egg production in the United States;
10) Documents and communications related to hatchery conditions in the United States; and
11) Documents and communications related to the use of culling or beak trimming in the egg production industry in the United States.

In response to each request, PETA served identical sets of objections and has refused to produce any documents.  PETA's objections are based on: (1) relevance; (2) burden and improper purpose; (3) confidential information, First Amendment, and privilege; (4) vagueness; and (5) the Foundation is not an affiliate of PETA.  Vital Farms addresses each of these in turn.

**(1)      PETA's Relevance Objections Lack Merit**

PETA has asserted general relevancy objections to each of the Requests on the grounds that they are purportedly irrelevant to the issues presented by the litigation, such as Vital Farms' labeling practices and the issue of whether "Plaintiffs were deceived by those representations." In support of its objections, PETA cites Rules 26 and 45 of the Federal Rules of Civil Procedure.

The governing Fourth Circuit case law interpreting these rules makes clear that "[r]elevance is not, on its own, a high bar." *Va. Dep't of Corrs. v. Jordan*, 921 F.3d 180, 188 (4th Cir. 2019).  "The scope of discovery for a nonparty litigant under a subpoena duces tecum is the same as the scope of a discovery request made upon a party to the action, and a party is entitled to information that is relevant to a claim or defense in the matter at issue."  *Consumer Fin. Prot. Bureau v. Nexus Servs., Inc.*, No. 5:21-CV-00016, 2022 WL 1597840, at *5 (W.D. Va. May 19, 2022) (quoting *Bell, Inc. v. GE Lighting, LLC*, No. 6:14-CV-12, 2014 WL 1630754, at *6 (W.D. Va. Apr. 23, 2014) (cleaned up)).  Relevance is to be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any party's claim or defense.  *See Jordan*, 921 F.3d at 188.  For the reasons that follow, the Requests each seek records that are relevant to issues presented by the litigation.

For instance, Plaintiffs allege that "Vital is engaged in humane-washing by making false claims about the humane nature of its products," specifically shell eggs. (Dkt. 1, ¶ 2.)  Accordingly, any studies or analyses by PETA of the egg production industry are relevant to understanding that industry generally, and for comparing Vital Farm's practices to other market participants' practices.  *See* Requests 3, 9-11.[1, 2]

---

[1]  Objection 9 actually admits that PETA has engaged in "internal communications, strategies, and advocacy work to dissuade consumers from buying or consuming eggs, and materials concerning individual PETA employees, members, supporters, or other affiliates, to the extent they have engaged with or been engaged by PETA's vegan advocacy regarding the egg industry."  This admission confirms that PETA has records responsive to Request 9.

[2]  The "Investigations" section of PETA's website (https://www.peta.org/investigations/) identifies numerous PETA investigations into the treatment of chickens, including specific issues presented in this case such as male chick culling, demonstrating that PETA has actively collected information relevant to what may or may not be standard in certain aspects of the poultry industry, how consumers may view various practices, and

**Sheppard**Mullin

Melissa Alpert
December 13, 2022
Page 3

Additionally, Plaintiffs allege that Vital Farms' marketing "has enabled it to charge super-premium prices for its eggs, which are up to seven times the price of ordinary store-bought eggs." (Dkt. 1, ¶ 5.) Thus, any studies and/or analyses by PETA regarding the pricing of eggs in the United States are relevant. *See* Request 7.

While PETA asserts that Requests 4, 5, and 6 are irrelevant to the question of whether *Plaintiffs* were deceived by Vital Farms' marketing, PETA is focused on the wrong inquiry. Plaintiffs' claims under California's Unfair Competition Law (UCL), Florida's Unfair and Deceptive Trade Practices Act (FDUPTA), and New York's General Business Law (GBL), for instance, each require a showing that a *reasonable consumer* would be misled by the labeling or marketing at issue. *See, e.g.*, *Ebner v. Fresh, Inc.*, 858 F.3d 958, 967-68 (9th Cir. 2016); *Zlotnick v. Premier Sales Group, Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007); *Kuklachev v. Gelfman*, 600 F.Supp.2d 437, 476 (E.D.N.Y. 2009). Texas law similarly requires a *reasonable inference* that the consumer detrimentally relied upon the false or misleading statement at issue. *Lee v. Samsung Elecs. Am., Inc.*, No. 4:21-CV-1321, 2022 WL 4243957, at *3 (S.D. Tex. Sept. 13, 2022). Consequently, any studies or analyses that PETA has undertaken regarding consumers' beliefs or preferences about eggs marketed or labeled as "ethical" or "humane," as specified in the Requests, are highly relevant. Further, PETA's efforts and strategies for trying to stop consumers from buying Vital Farms' products (or eggs more generally) are relevant because they pertain to the information available to or known by the reasonable consumer whose preferences, buying habits, and knowledge are directly at issue. *See* Requests 1, 2, and 8.

As to Request 8, which seeks PETA's records related to Vital Farms, Vital Farms notes that PETA inserted itself into the public discussion about this litigation by posting about it on its own website.[3] For instance, Asher Smith, "PETA Foundation Director of Litigation" is quoted saying "Vegan food is the only truly ethical choice, and PETA and compassionate consumers hope to see an end to [Vital Farms'] malignant marketing gimmicks." He is also quoted as saying "PETA is working to ensure that this case puts a stop to and punishes dishonest marketing tactics that betray kind consumers." PETA has taken a position and a public stance against Vital Farms, putting PETA and any relevant information it possesses squarely in the middle of this litigation.

Finally, PETA's objections suggest that PETA is a market competitor of Vital Farms. When litigants have subpoenaed records from non-party competitors, courts have tended to quash the subpoenas only to the extent they seek confidential commercial information that could be used in an effort to gain financial advantage over the competitor or cause the competitor harm. *See, e.g., Insulate Am. v. Masco Corp.*, 227 F.R.D. 427, 434 (W.D.N.C. 2005). That is not the case here. Vital Farms is not requesting trade secrets, commercial information, or financial data from PETA;

---

any alternatives to the same. For these reasons, Vital Farms reasonably believes that PETA has documents responsive to these Requests.

[3] https://www.peta.org/media/news-releases/false-advertising-lawsuit-against-vital-farms-wins-right-to-proceed/;
https://www.peta.org/blog/class-action-lawsuit-vital-farms-eggs/;
https://www.peta.org/media/news-releases/los-angeles-area-residents-sue-major-egg-seller/;
https://www.peta.org/?s=%22vital+farms%22; and
https://www.peta.org/media/news-releases/peta-foundation-lawyers-take-on-vital-farms-false-claims-of-humane-treatment/

**Sheppard**Mullin

Melissa Alpert
December 13, 2022
Page 4

rather it is requesting relevant information from activities, studies and surveys that PETA has conducted with the likely intention of sharing that information with the public.  Further, there is a strong Protective Order in place which PETA can rely upon to protect any information it considers to be "confidential."

**(2)      PETA's Burden & Improper Purpose Objections Lack Merit**

PETA's burden-related objections include that: (1) the Requests are not limited in time, (2) the Requests purportedly call for irrelevant documents, (3) PETA will have to spend time looking for documents, (4) the Requests seek publicly available information, and (5) the Requests were propounded for an improper purpose.

First, as to the time period objections, Vital Farms agrees to limit the Requests to the period May 20, 2015 through the date of production.  Vital Farms expects this will fully resolve this category of objections.

Second, as to the relevancy objections, Vital Farms refers PETA to the discussion above.  For the reasons stated in the foregoing section, Vital Farms confirms that the Requests seek relevant information.

Third, PETA's conclusory statement that it will have to spend time and resources searching for relevant records is not sufficient grounds for claiming undue burden.  "An objection that discovery is overly broad and unduly burdensome must be supported by affidavits or evidence revealing the nature of the burden and why the discovery is objectional."  *JAK Prods., Inc. v. Robert Bayer*, No. 2:15-CV-00361, 2015 WL 2452986, at *7 (S.D.W. Va. May 22, 2015) (citing *Allstate Insurance Company v. Gaughan*, 220 W.Va. 113, 640 S.E.2d 176 (2006)).  Without such evidence, PETA's objections lack merit.  Further, "[a] subpoena is overbroad if it does not limit the documents requested to subject matter relevant to the claims or defenses."  *In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d 606, 612 (E.D. Va. 2008).  Because the Requests seek relevant records from PETA, the Requests are not overbroad or unduly burdensome.

Fourth, when a non-party objects that a request creates an undue burden because the information may be publicly available, it is required to identify where that information is located.  *RLI Ins. Co. v. Nexus Servs., Inc.*, No. 5:18-CV-00066, 2019 WL 8324257, at *2 (W.D. Va. Nov. 27, 2019).  PETA fails to identify where the "publicly available statements or communications" are located in its objections to Request Nos. 1-7 and 9-11, and it simultaneously objects that the information requested may be both publicly available *and* confidential (i.e., "internal communications …").  PETA's admission undermines its objection entirely.

Finally, in reference to PETA's assertion regarding the November 17, 2022 meet and confer and accusation of harassment and retribution, this is a plain mischaracterization of that meeting.  Counsel for Vital Farms clearly stated that PETA's affiliation with the Foundation was *not*  the sole reason for its service of the Subpoenas, and that PETA and the Foundation will likely have information relevant to the claims in this litigation.   As further discussed herein, PETA has represented to the public that it is involved in and/or interested in the litigation.  PETA's public

**SheppardMullin**

Melissa Alpert
December 13, 2022
Page 5

statements and at least peripheral involvement with the litigation are the basis for serving the
PETA Subpoena.

**(3)      PETA's Confidential Information, First Amendment & Privilege Objections Lack
Merit**

PETA asserts variously that the Requests seek confidential, internal, and/or employee-related
information.  As an initial matter, as discussed above, there is a strong Protective Order entered
in this case, which provides sufficient protection of PETA's records and negates these objections.
Further, Vital Farms is not looking for personal information of individuals beyond what is
necessary to make sense of, or have proper context for, PETA's records (for instance, on email
communications, inclusion of the From/To/CC/BCC data).   Vital Farms is not looking for
employment records.  If there are certain kinds of records that PETA is concerned about, we
would be happy to discuss with you, to better understand the issue(s) and reach agreement on
the appropriate means for protecting such records.

PETA also claims that the First Amendment shields it from having to produce documents
responsive to the Requests.  "The party asserting the privilege must make a prima facie showing
that it applies by 'demonstrat[ing] an objectively reasonable probability that compelled disclosure
will chill associational rights, i.e. that disclosure will deter membership due to fears of threats,
harassment or reprisal from either government officials or private parties which may affect
members' physical well-being, political activities or economic interests.'"  *Roanoke River Basin
Ass'n v. Duke Energy Progress, LLC*, No. 1:16-CV-607, 2018 WL 11449629, at *2 (M.D.N.C. May
25, 2018) (citing *In re Motor Fuel Temperature Saks Practices Litig.*, 707 F. Supp. 2d 1145, 1153
(D. Kan. 2010)).  Membership and volunteer lists are the kinds of information that the courts are
concerned about protecting from unwarranted disclosure.  *Nat'l Ass'n for Advancement of Colored
People v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 462 (1958).

PETA has made no showing whatsoever, let alone a prima facie showing, that the Requests seek
information likely to impair its associational activities.  Vital Farms has not requested membership
lists or volunteer lists, but rather narrowly tailored information regarding PETA's studies, surveys,
and strategies resulting in information on eggs, egg consumers, egg pricing, and farm/hatchery
practices – all of which are relevant to the pending litigation with Plaintiffs.  Thus, PETA's First
Amendment objections lack merit.

Finally, PETA has asserted a general objection that the Requests "call for the production of
documents that are protected by the attorney-client privilege and work-product doctrine, as PETA
has been party to lawsuits related to animal protection …".  However, on their face, none of the
Requests call for privileged documents.  Rather, they call for documents related to certain
advocacy efforts related to dissuading consumers from buying or eating eggs (Requests 1-2),
consumer analyses or studies (Requests 4-6), egg pricing in the United States (Request 7), Vital
Farms (Request 8), and egg production conditions or practices in the United States (Requests 3,
9-11).  The fact that any responsive records might have been used in other litigation, or even
shared with attorneys, does not render the underlying documents and information privileged or
work product protected.  Further, when making its privilege objection, it was PETA's burden to
"describe the nature of the withheld documents, communications, or tangible things in a manner

**Sheppard**Mullin

Melissa Alpert
December 13, 2022
Page 6

that, without revealing information itself privileged or protected, will enable the parties to assess the claim."  F.R.C.P. 45(e)(2)(A)(ii); *see also Adair v. EQT Prod. Co.,* 285 F.R.D. 376, 382 (W.D. Va. 2012).  PETA failed to do this and thus on its face PETA's privilege and work product objections lack merit.  If PETA has responsive records that it believes are subject to a claim of privilege or work product protection, Vital Farms asks that PETA submit a privilege log so that Vital Farms can specifically evaluate the claims.

**(4)      PETA's Vagueness Objections Lack Merit**

PETA objects that the phrase "provided assistance" used in some of the Requests is vague and ambiguous.  Vital Farms is confused by PETA's purported confusion, as this is a phrase that PETA uses amply in its news releases.  For example, PETA "assist[ed] in placing [] animals at accredited sanctuaries"[4]; it "assist[ed] [OB/GYN residency programs] in their transition to superior, *animal-free* teaching methods"[5]; and it "assist[ed] local grassroots programs and organization that care for animals.[6]  Based on the foregoing, it appears that these objections were interposed in bad faith.  For the avoidance of any doubt, Vital Farms refers PETA to the plain English definition of the terms:

> "provide": "to supply or make available (something wanted or needed)"[7]

> "assistance": "the act of helping or assisting someone or the help supplied"[8].

We expect that this information entirely resolves this category of objections.

**(5)      Objection That PETA Is Not Affiliated With PETA Foundation Lacks Merit**

PETA asserts that the Foundation "is not a legal affiliate of PETA" and on that basis objects to the definition of "YOU," "YOUR," and "PETA" used in the PETA Subpoena.  However, according to PETA's website the Foundation is "the organization that helps PETA operate.  Departments like IT, Development, and Interactive Media are all part of the PETA Foundation.  PETA and the PETA Foundation are two separate entities that work very closely together, and one couldn't exist without the other."[9]

Further, in IRS filings submitted as recently as February 2021, PETA has held itself out as affiliated with and related to the Foundation.  On its Schedule O (the purpose of which schedule is to provide the IRS with more information about an organization's operations), PETA specifically referenced actions undertaken by the Foundation.  On its Schedule R ("Related Organizations

---

[4]  https://www.peta.org/media/news-releases/feds-find-tigers-in-maggot-filled-barn-after-being-tipped-off-by-peta/
[5]  https://www.peta.org/blog/victory-aurora-sinai-medical-center-wisconsin-replaces-live-pigs-high-tech-simulators/
[6]  https://prime.peta.org/news/peta-is-helping-homeless-animals-in-romania/
[7]  https://www.merriam-webster.com/dictionary/provide
[8]  https://www.merriam-webster.com/dictionary/assistance
[9]  https://www.peta.org/about-peta/work-at-peta/#:~:text=It%27s%20the%20organization%20that%20helps,t%20exist%20without%20the%20other.

**Sheppard**Mullin

Melissa Alpert
December 13, 2022
Page 7

and Unrelated Partnerships"), PETA listed the Foundation (US and UK).  It also identified that it engaged in over $20 million in financial transactions with the Foundation (gift, grant or capital contributions; and performance of services).  PETA simply cannot pick and choose when it wants to be associated with the Foundation.  Accordingly, PETA's objection lacks merit.

## PETA FOUNDATION SUBPOENA

Vital Farms' PETA Foundation Subpoena included three requests for production of documents (for purposes of this section, referred to as the "Requests").  The Requests are summarized as follows:

1) Communications between PETA and the Foundation related to Vital Farms;
2) Documents from PETA related to Vital Farms; and
3) Document and communications related to the lawsuit.

In response to each Request, the Foundation served near-identical sets of objections and has refused to produce any documents.  The Foundation's objections are based on: (1) heightened scrutiny for propounding discovery on opposing counsel; (2) privilege; (3) relevance; (4) burden and improper purpose; and (5) confidential information and First Amendment.  Vital Farms addresses each of these in turn.

## (1)      The Foundation's Heightened Scrutiny Objection Lacks Merit

The Foundation generally objects that the Requests are "particularly suspect and subject to judicial scrutiny" because attorneys from the Foundation serve as counsel to Plaintiffs.  However, Vital Farms' best information is that the Foundation *is not* a law firm.  It is a much larger organization that apparently has a legal department or at least employs attorneys to perform certain functions.  In this way, it is like any other organization with a legal department, and the fact that the organization has a legal department does not automatically bar discovery directed to the rest of the organization.

Specifically, public records show that the Foundation is a registered 501(c)(3) non-profit corporation that provides a number of functions to PETA as well as other animal protection organizations.  The Foundation's website explains that its services include "accounting and legal services, creative consultation, employee benefit administration, technology, and database management."[10]   Current job openings at the Foundation include "Community Fundraising Manager," "Membership Relationship Coordinator," "Public Relations Coordinator," and "Social Media Advertising Coordinator."[11]

Because the Foundation provides services to other organizations, Vital Farms tailored Requests 1 and 2 to just the documents and communications the Foundation may have had or exchanged with PETA.  The Requests do not explicitly seek (and are not meant to impliedly seek) counsel's litigation files, privileged communications, or other work product.

---

[10]  https://www.petafoundation.org/
[11]  https://www.peta.org/about-peta/work-at-peta/search-jobs-peta/

**SheppardMullin**

Melissa Alpert
December 13, 2022
Page 8

**(2)      The Foundation's Privilege Objections Lack Merit**

The Foundation has objected that the Requests "explicitly call[] for documents that are protected from disclosure by work product doctrine and/or the attorney client privilege…" and that "[t]his request is a patently improper request for opposing counsel's litigation file."   These objections assume that the Foundation has no other role outside of employing two attorneys who serve as opposing counsel to Vital Farms.  However, as discussed above, the Foundation is not a law firm and Vital Farms is not seeking counsel's litigation files.

Further, the Foundation cannot avoid relevant discovery by pointing to the fact that it employs attorneys.  The fact that any responsive records might have been used in other litigation, or even shared with attorneys, does not render the underlying documents and information privileged or work product protected.  Further, when making its privilege objection, it was the Foundation's burden to "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim."  F.R.C.P. 45(e)(2)(A)(ii); *see also Adair, supra,* 285 F.R.D. at 382.  The Foundation failed to do this and thus on its face the Foundation's privilege and work product objections lack merit.  If the Foundation has responsive records that it believes are subject to a claim of privilege or work product protection, Vital Farms asks that the Foundation submit a privilege log so that Vital Farms can specifically evaluate the claims.

**(3)      The Foundation's Relevance Objections Lack Merit**

The Foundation has asserted that the Requests seek information and records that are not relevant to any issues in the litigation.  However, as explained above, PETA and the Foundation are inherently intertwined, sharing the same address, engaging in millions of dollars of financial transactions, and are very public about their affiliation.   PETA has even publicized the Foundation's work on this litigation.[12]  Because of their close relationship (which again includes the Foundation providing functions like IT and media to PETA), Vital Farms cannot know precisely how the organizations differentiate personnel or functions and thus, in order to do its due diligence in discovery, Vital Farms must obtain discovery from the Foundation.  Vital Farms has not simply duplicated its requests from the PETA Subpoena, but has tailored its requests to obtain relevant information that could reasonably be in the Foundation's possession, custody, and control.

To that end, Requests 1 and 2 seek communications between PETA and the Foundation related to Vital Farms, and documents from PETA related to Vital Farms.  To the extent that PETA has investigated Vital Farms' egg practices and pricing (for instance), documents responsive to this request may be relevant to the issue of Plaintiffs' burden of proof, i.e., that Vital Farms' practices are allegedly unethical and permit Vital Farms to allegedly charge a price premium.  Documents responsive to this request may also be relevant to the questions of both the expectations of the reasonable consumer and of Plaintiffs.

---

[12]  https://www.peta.org/media/news-releases/peta-foundation-lawyers-take-on-vital-farms-false-claims-of-humane-treatment/

**Sheppard**Mullin

Melissa Alpert
December 13, 2022
Page 9

Finally, the litigation has shown that the Foundation, either separately or in conjunction with PETA, seeks to shape consumer demand for eggs, including Vital Farms' eggs.  In this way, the Foundation is a market participant and even competitor to Vital Farms.  How the Foundation uses materials or information related to the litigation is relevant to understand reasonable consumers' knowledge and expectations related to the egg industry, and also to evaluating the Plaintiffs' knowledge and expectations.  The Foundations' communications and documents related to this litigation could also provide relevant information on topics such as whether the Foundation has fundraised to contribute to the suit (which may even indicate that the Foundation has a financial interest in the outcome of the litigation), or if any social media campaigns have been launched by the Foundation in support of Plaintiffs' and their allegations.  Request 3 seeks separate and distinct documents from Requests 1 and 2 because it is highly plausible that certain non-privileged activities were undertaken exclusively under the umbrella of the Foundation, not PETA.  To the extent that the Foundation has undertaken activities directly related to this lawsuit beyond the scope of the work of the attorneys who have appeared or other legal representation of the Plaintiffs, including but not necessarily limited to creative consultation, media, technology, and database management, those activities are directly relevant to this litigation.  These activities are not *per se* privileged or protected attorney work product merely because they were undertaken by the same non-law firm entity whose lawyers are involved in this case.

Again, to be clear, the Requests seek documents and information related to the Foundation's involvement with PETA and its campaign against Vital Farms, not its involvement as counsel to Plaintiffs.

**(4)      The Foundation's Burden & Improper Purpose Objections Lack Merit**

The Foundation's burden-related objections include that: (1) the Requests purportedly call for irrelevant documents; (2) the Requests are not limited in time, (3) the Foundation will have to spend time looking for documents, (4) the Requests are duplicative of and/or subsumed by those sought by the PETA Subpoena; and (5) the Requests were propounded for an improper purpose.

First, as to the relevancy objections, Vital Farms refers the Foundation to the discussion in the immediately preceding section.  For the reasons stated there, Vital Farms confirms that the Requests seek relevant information.

Second, as to the time period objections, Vital Farms agrees to limit the Requests to the period May 20, 2015 through the date of production.  Vital Farms expects this will fully resolve these objections.

Third, as to the time and resources objections, Vital Farms refers the Foundation to the above discussion under the PETA Subpoena, Section 2.  For the same reasons, the Foundation's burden objections lack all merit.

Fourth, as to the objection that Requests 1 and 2 are duplicative of and/or subsumed by those in the PETA Subpoena, Vital Farms reiterates its point that there is no way for it to know precisely how PETA and the Foundation differentiate personnel, functions, or information storage.  While closely intertwined, the organizations both continue to emphasize that they are separate.  Thus,

**Sheppard**Mullin

Melissa Alpert
December 13, 2022
Page 10

in order to make sure Vital Farms is not missing any communications or documents that could be solely in the Foundation's possession, it is required to propound these Requests.

Fifth, as to the Foundation's assertion regarding the November 17, 2022 meet and confer and accusation of harassment and retribution, Vital Farms reiterates that this is a mischaracterization of that meeting and refers the Foundation to its response to the PETA Subpoena above at Section 2.  For the same reasons, this objection by the Foundation lacks all merit.

**(5)    The Foundation's Confidential Information/First Amendment Protection Objections Lack Merit**

The Foundation generally objects that the Requests seek confidential information about the Foundation's "strategies and tactics, including legal advocacy strategies and tactics."  As an initial matter, there is a strong Protective Order entered in this case, which provides sufficient protection of the Foundation's records and negates these objections.  Further, as aforementioned, Vital Farms is not looking for the Foundation's privileged legal strategies or tactics related to this or any other litigation.  If there are certain kinds of documents that the Foundation is concerned about, we would be happy to discuss with you, to better understand the issue(s) and reach agreement on the appropriate means for protecting such records.

As to the Foundation's general objection that the First Amendment protects it from disclosing any "clients or individuals PETA Foundation counsel have represented, advised, assisted, interviewed, communicated with, or otherwise supported in furtherance of its litigation or other legal efforts supporting animal protection," Vital Farms reiterates that it is not seeking litigation files of counsel.

As to the Foundation's general First Amendment objections, "[t]he party asserting the [First Amendment] privilege must make a prima facie showing that it applies by 'demonstrat[ing] an objectively reasonable probability that compelled disclosure will chill associational rights, i.e. that disclosure will deter membership due to fears of threats, harassment or reprisal from either government officials or private parties which may affect members' physical well-being, political activities or economic interests.'"  *Roanoke River Basin Ass'n v. Duke Energy Progress, LLC*, No. 1:16-CV-607, 2018 WL 11449629, at *2 (M.D.N.C. May 25, 2018) (citing *In re Motor Fuel Temperature Saks Practices Litig*., 707 F. Supp. 2d 1145, 1153 (D. Kan. 2010)).  Membership and volunteer lists are the kinds of information that the courts are concerned about protecting from unwarranted disclosure.  *Nat'l Ass'n for Advancement of Colored People v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 462 (1958).  Similar to PETA, the Foundation has made no showing that the Requests seek information likely to impair its associational activities.  Thus, the Foundation's First Amendment objections lack merit.

Please let us know when you are available to meet and confer.  We look forward to a productive and amicable resolution of these topics.

# **Sheppard**Mullin

Melissa Alpert
December 13, 2022
Page 11

Best,

Abby H. Meyer
for SHEPPARD MULLIN RICHTER & HAMPTON LLP

SMRH:4885-6303-2130