# Exhibit D

## Alpert, Melissa R.

| | |
|---|---|
| **From:** | Alpert, Melissa R. |
| **Sent:** | Friday, December 30, 2022 9:20 PM |
| **To:** | 'Abby Meyer' |
| **Subject:** | RE: Nicholas A. Usler, et al. v. Vital Farms, Inc., Case No. 1:21-cv-00447-RP (W.D. Tex.) |

Abby,

I received no out of office note; perhaps your settings did not include external out of offices.

Your email (sent at 7:44pm on, again, the last court day before the long holiday, and after I informed you that I had drafted motions to quash and am imminently filing) and the prior email contain nothing that suggest any willingness to compromise. Rather than "closing the gap" on Requests 2-7, or minimizing disputes, your email expands the scope of Vital Farms' requests beyond even their reasonable plain meaning. And Vital Farms still refuses to address my clients' objections to the other myriad requests in its subpoenas, including the request for opposing counsel's litigation file. I will be proceeding with motions to quash. If, after reading those motions, Vital Farms wants to reconsider its Subpoenas, please let me know.

Sincerely,
Melissa

**K&L GATES**

**Melissa Alpert**
Associate
K&L Gates LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222-2613
Phone: 412-355-3779
Melissa.Alpert@klgates.com
www.klgates.com

**From:** Abby Meyer <AMeyer@sheppardmullin.com>
**Sent:** Friday, December 30, 2022 8:12 PM
**To:** Alpert, Melissa R. <Melissa.Alpert@klgates.com>
**Subject:** RE: Nicholas A. Usler, et al. v. Vital Farms, Inc., Case No. 1:21-cv-00447-RP (W.D. Tex.)

**External Sender:**

Melissa,

This is unfortunate news, as your timing concerns could have been addressed by a simple request for an extension to complete meet and confer. Courts hate to be burdened with unnecessary motion practice and prefer to see parties work together to minimize disputes. I had thought we were closing the gap here on Requests 2-7.

1

I've had my out of office up this week, which indicated my limited availability to answer emails, and you would have received that when you emailed me on Wednesday.

If you'd like more time to see where meet and confer will go, I'm happy to give it.

Best,
Abby

**Abby Meyer**
**SheppardMullin** | Costa Mesa
+1 714-424-2811 | ext. 12811

---

**From:** Alpert, Melissa R. <Melissa.Alpert@klgates.com>
**Sent:** Friday, December 30, 2022 4:44 PM
**To:** Abby Meyer <AMeyer@sheppardmullin.com>
**Subject:** RE: Nicholas A. Usler, et al. v. Vital Farms, Inc., Case No. 1:21-cv-00447-RP (W.D. Tex.)

Abby,

Your email arrives at 5:41pm Eastern on the last day courts are open before the holiday weekend, and the last day courts are open before compliance with your subpoenas is due.

I had made an offer to compromise on Wednesday morning, noting that my clients had searched in good faith for <u>studies</u>, as specifically defined, <u>conducted or funded by them</u>, related to the specified topics in requests 2-7. These topics pertain to <u>eggs</u>, the subject of the underlying lawsuit. Nothing in your email, which cites informal public outreach and a petition about labeling of meat that cites third-party studies equally available to Vital Farms from public sources, suggests that this response was inaccurate.

Your email does, however, again reveal how very overbroad Vital Farms' requests are. For example, given what you suggest to be the scope of your requests, running down all third party materials "collected" by nonparty PETA—an organization with hundreds of employees engaged daily in vegan advocacy—for "research" and "evaluation," among myriad other purposes, is a monumental undertaking that would require review of essentially every email, folder, and document created by PETA in furtherance of its vegan advocacy mission, would cost several hundreds of thousands of dollars, and would require months of attorney time at a minimum; particularly in light of the expansive manner in which you define such materials ("studies, reports, analyses, evaluations, etc.").

The overbreadth of what you characterize as responsive indicates to me that the discussion would not be fruitful. And your request to discuss parameters arrives so close to the deadline as to be of no benefit. Given my need to preserve my clients' rights, I have already drafted and am in the process of finalizing motions to quash. I will be filing and sending these within the next few hours.

Sincerely,

Melissa



**Melissa Alpert**
Associate
K&L Gates LLP
K&L Gates Center
210 Sixth Avenue

Pittsburgh, PA 15222-2613
Phone: 412-355-3779
Melissa.Alpert@klgates.com
www.klgates.com

---

**From:** Abby Meyer <AMeyer@sheppardmullin.com>
**Sent:** Friday, December 30, 2022 5:41 PM
**To:** Alpert, Melissa R. <Melissa.Alpert@klgates.com>
**Subject:** RE: Nicholas A. Usler, et al. v. Vital Farms, Inc., Case No. 1:21-cv-00447-RP (W.D. Tex.)


Melissa,

I appreciate your patience as I've been traveling over the holidays with my children, which has delayed my response.

As noted in the prior correspondence, we have not agreed to modify Requests 2-7 to eliminate the studies/analyses that PETA has participated in.  The fact that PETA/the Foundation assert they have no documents responsive to Requests 2-7 negates a burdensomeness objection to the scope of the Requests.  For the reasons set forth below and in our meet and confer letter, we reconfirm that we are seeking surveys and analyses, as called for by the respective requests, conducted, funded, or participated in by PETA and/or PETA Foundation.  And again, this limitation is not meant to exclude third party materials (studies, reports, analyses, evaluations, etc.) that PETA received or collected from third-parties in conjunction with its own research, studies, evaluation, etc. on the subject matter.

Further, we have some concerns about PETA's representation about the records that it has (or rather, claims it doesn't have) responsive to Requests 2-7.

For instance, PETA hosts an on-going consumer survey on its website at https://www.peta.org/features/were-you-misled-by-humane-labels/.  The records generated by this survey, any analyses therefrom, and communications about them are plainly responsive to our Subpoena, Requests 4-6.

Similarly, in June 2022, PETA submitted a petition to FSIS that includes a lengthy analysis of consumer purchasing preferences, beliefs, and pricing analysis.  The documents and communications related to the petition are relevant to Requests 4-7.  *See also* PETA's website at https://www.peta.org/blog/usda-petition-amend-rules-approving-humane-meat-claims/.

The fact that PETA's searches did not return materials related even to the above is concerning to us.  We would like to know:
1. How PETA/the Foundation physically keep its records (shared cloud database; individual/unlinked storage devices; other)
2. How PETA/the Foundation searched for records (i.e., did it run search terms across a cloud database/server, or have individual custodians look for materials)
3. What search criteria specifically were applied?
4. Whether emails were searched and, if so, whose emails?

Finally, if this ultimately comes down to burden concerns, generally knowing the above will help us work together to tailor appropriate search criteria.  I'd be happy to get on a call with you on January 2 to discuss this if you'd like.

We look forward to your further response.

Happy new year,
Abby

**Abby Meyer**
**SheppardMullin** | Costa Mesa
+1 714-424-2811 | ext. 12811

---

**From:** Alpert, Melissa R. <Melissa.Alpert@klgates.com>
**Sent:** Wednesday, December 28, 2022 9:32 AM
**To:** Abby Meyer <AMeyer@sheppardmullin.com>
**Subject:** RE: Nicholas A. Usler, et al. v. Vital Farms, Inc., Case No. 1:21-cv-00447-RP (W.D. Tex.)

Abby,

I do not recall representing that "neither PETA nor the Foundation had made any efforts as yet to search for documents," and believe that I did not do so.  In fact, PETA and PETA Foundation have conducted initial searches, and the excessive number of hits from using relevant search terms will form part of the factual basis of their respective forthcoming motions to quash.

Regarding Requests 2-7, without waiving any of PETA's objections to these requests, in the interest of attempting to narrow the parties' dispute and in light of the upcoming compliance deadline, PETA has made reasonable efforts to identify whether it has undertaken or funded any studies related to any of the topics 2-7.  PETA understands the word "study" to have its ordinary and common meaning: a formal and systematic investigation and analysis of a subject or situation, based on collection of and analysis of data.  PETA can confirm that it currently believes it has undertaken or funded no such studies in the relevant time period.  (That is, no studies: "to dissuade consumers from buying or eating EGGS," "regarding EGG production," "concerning consumer preferences regarding EGGS," "regarding consumers' beliefs or preferences about the treatment of chickens," "regarding consumers' beliefs or preferences about advertising, marketing, or labeling of EGGS using the terms 'ethical' and/or 'humane'," or "concerning EGG pricing in the United States.")

In addition, while PETA continues to object to Vital Farms' definition of "YOU," as explained in its objections, including its inclusion of separate corporate entity PETA Foundation, in the interest of working to narrow the parties' dispute over these requests, PETA Foundation also took reasonable efforts to identify whether it has undertaken or funded any such studies. After doing so, PETA Foundation can similarly state that it does not believe it has either undertaken or funded any such studies in the relevant time period.

PETA can offer to supplement its response to Requests 2-7 with the above statement, if doing so will be sufficient to answer these requests and avoid the need to move to quash on Requests 2-7.  Let me know.

Sincerely,
Melissa



**Melissa Alpert**
Associate
K&L Gates LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222-2613
Phone: 412-355-3779

Melissa.Alpert@klgates.com
www.klgates.com

---

**From:** Abby Meyer <AMeyer@sheppardmullin.com>
**Sent:** Friday, December 23, 2022 1:53 PM
**To:** Alpert, Melissa R. <Melissa.Alpert@klgates.com>
**Subject:** RE: Nicholas A. Usler, et al. v. Vital Farms, Inc., Case No. 1:21-cv-00447-RP (W.D. Tex.)

Melissa,

During our meet and confer, you confirmed that neither PETA nor the Foundation had made any efforts as yet to search for documents.  Thus your concerns over burden are merely speculative.  Until I have more information about the actual extent of burden, you are unfairly asking Vital Farms to negotiate against itself.  You are also asking that we further narrow the requests without any corresponding commitment to producing documents.  We believe that the requests as served seek relevant documents for the reasons set forth in the meet and confer letter.

Best,
Abby

**Abby Meyer**
**Sheppard**Mullin | Costa Mesa
+1 714-424-2811 | ext. 12811

---

**From:** Alpert, Melissa R. <Melissa.Alpert@klgates.com>
**Sent:** Thursday, December 22, 2022 1:38 PM
**To:** Abby Meyer <AMeyer@sheppardmullin.com>
**Subject:** RE: Nicholas A. Usler, et al. v. Vital Farms, Inc., Case No. 1:21-cv-00447-RP (W.D. Tex.)

Hi Abby,

Thank you for getting back to me.  Regarding topic 3 below, related to Requests 2-7 of the PETA subpoena, I had inquired whether Vital Farms would be willing to revise its Requests 2-7 -- which ask for studies (or analyses/surveys depending on the request) that "YOU have conducted, funded, participated in, or provided assistance in …" -- to only those that PETA (or, at your request, PETA Foundation) "conducted [or] funded."  Because the initial requests were written so broadly, it would be a substantial undertaking to identify any studies/analyses/surveys that PETA not only conducted or funded itself, but also to identify any potential third-party study that PETA may have participated in or provided assistance to at any point since May 20, 2015.  Your response indicates that Vital Farms is willing to revise the request to remove the term "provided assistance in," but not to remove the term "participated in"; is that correct?  This still leaves the substantial manageability/size of review concerns I identified previously.  Is Vital Farms willing to reconsider my ask, and revise these requests to encompass only studies/analyses/surveys (depending on the request) that "PETA or PETA Foundation conducted or funded . . ."?

My response to topics 1 and 2 below will be pending the answer to that question.  Regarding the other requests, I am not sure what additional information I can provide beyond what was in the formal objections and discussed on our call Tuesday.  I take from your message that Vital Farms will not further narrow, tailor, or withdraw any of these requests, beyond limiting the applicable time period to May 20, 2015.  Therefore, it seems likely the parties are at an impasse as to those requests.

Sincerely,
Melissa

5

**K&L GATES**

**Melissa Alpert**
Associate
K&L Gates LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222-2613
Phone: 412-355-3779
Melissa.Alpert@klgates.com
www.klgates.com

---

**From:** Abby Meyer <AMeyer@sheppardmullin.com>
**Sent:** Wednesday, December 21, 2022 2:52 PM
**To:** Alpert, Melissa R. <Melissa.Alpert@klgates.com>
**Subject:** RE: Nicholas A. Usler, et al. v. Vital Farms, Inc., Case No. 1:21-cv-00447-RP (W.D. Tex.)

Melissa,

Thank you for making the time to meet and confer yesterday. I wanted to get back to you on some specific questions that you raised during the call:

1. Request 5: You had asked about the definition of the word "chickens" used in the request. The use of "chickens" without a limitation to chickens raised for egg production was intentional. This is because PETA has combined messages about chickens raised for egg production and chickens raised for other purposes. For instance, in this post from May 28, 2021 (updated November 25, 2022), Vital Farms Claims Humane Treatment of Chickens—PETA Foundation Lawyers Help File Class Action Lawsuit | PETA, PETA has included images from non-Vital Farms facilities depicting the processing of chickens for consumption, not for egg production. Since PETA has apparently collected information on both processes and has conflated the two in public statements about Vital Farms, we believe both are relevant for the reasons set forth in our December 13 meet and confer letter.
2. Requests 4 and 7: You had asked about the use of the term "analyses" used in the requests. Our view is that "analyses" would be a broader term than surveys and studies, to include research, findings (raw data results of surveys), and actual analysis of findings. The terms analyses, studies, and surveys are overlapping and somewhat interchangeable, particularly in Request 7. If the meaning is still unclear to you, we can schedule a time to talk through the contours of the term in order to formulate search terms or a discovery protocol for your clients. Just let me know.
3. Requests 2-7: We can agree to limit this request to studies (and/or surveys and analyses, as called for by the respective requests) conducted, funded, or participated in by PETA and/or PETA Foundation. However, and to be clear, this limitation is not meant to exclude third party materials (studies, reports, analyses, evaluations, etc.) that PETA received or collected from third-parties in conjunction with its own research, studies, evaluation, etc. on the subject matter.

Based on the foregoing, I hope that we can receive PETA's agreement to produce the documents in its possession, custody, and control responsive to Requests 2-7.

Regarding the other requests (PETA Subpoena Requests 1 and 8-11; Foundation Subpoena Requests 1-3), I don't have enough information from you to understand how we might resolve the discovery dispute. Should we set another call to

talk through the issues, or would you prefer a written position statement at this point?  If PETA/the Foundation's fundamental position is that it will not budge off its relevancy objections, I'd like to know that upfront so that we can proceed with motion practice.

Best,
Abby

**Abby Meyer**
**SheppardMullin** | Costa Mesa
+1 714-424-2811 | ext. 12811

**From:** Alpert, Melissa R. <Melissa.Alpert@klgates.com>
**Sent:** Tuesday, December 13, 2022 5:56 PM
**To:** Abby Meyer <AMeyer@sheppardmullin.com>
**Subject:** RE: Nicholas A. Usler, et al. v. Vital Farms, Inc., Case No. 1:21-cv-00447-RP (W.D. Tex.)

Abby,

Thank you for providing Vital Farms' response, which I look forward to reviewing.  An extension of the time of compliance for both subpoenas to January 3, 2023 is very appreciated.  I am hopeful the additional time will help the parties to attempt resolution.  I will circle back after reviewing your letter to schedule a meet and confer.

Sincerely,
Melissa

**K&L GATES**

**Melissa Alpert**
Associate
K&L Gates LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222-2613
Phone: 412-355-3779
Melissa.Alpert@klgates.com
www.klgates.com

**From:** Abby Meyer <AMeyer@sheppardmullin.com>
**Sent:** Tuesday, December 13, 2022 8:12 PM
**To:** Alpert, Melissa R. <Melissa.Alpert@klgates.com>
**Subject:** RE: Nicholas A. Usler, et al. v. Vital Farms, Inc., Case No. 1:21-cv-00447-RP (W.D. Tex.)

Melissa,

Enclosed please find the meet and confer letter that I referenced in prior correspondence.  I look forward to discussing with you once you've had a chance to review it.

In terms of an extension, given our proximity to the holidays and to respect your time at this time of year, would it make more sense to give you an extension on both Subpoenas' compliance deadlines to January 3, 2023?

Please let me know.

Best,
Abby

**Abby Meyer**
**SheppardMullin** | Costa Mesa
+1 714-424-2811 | ext. 12811

---

**From:** Alpert, Melissa R. <Melissa.Alpert@klgates.com>
**Sent:** Tuesday, December 13, 2022 9:21 AM
**To:** Abby Meyer <AMeyer@sheppardmullin.com>
**Subject:** RE: Nicholas A. Usler, et al. v. Vital Farms, Inc., Case No. 1:21-cv-00447-RP (W.D. Tex.)

Hi Abby,

Thank you for taking my phone call yesterday, and for this update. I had inquired about the timing of Vital Farms' response to our objections, because as I noted, the time of compliance is fast approaching; and I want to ensure the parties will have sufficient time to meet and confer in good faith, so that hopefully the parties can reach resolution before requiring Court involvement; and I understand Vital Farms will not meet and confer until it sends this formal response. However, I also need to ensure that I am preserving my clients' rights, including my clients' rights to move to quash these subpoenas. The time of compliance is relevant to preserving that right, as a motion to quash must be timely under FRCP 45. This is why I have requested an extension of the date of compliance.

When I provided Vital Farms our objections 11 days ago, I asked Vital Farms to meet and confer, so that my clients could understand Vital Farms' position on its subpoenas in light of our identified objections, including whether it would be withdrawing or altering any of its requests, and whether the parties would be able to reach a resolution short of requiring Court involvement. Vital Farms stated that it would prefer not to meet and confer until it provided a formal written response to those objections; however your note indicates that this formal response is still pending. I am concerned that Vital Farms' delay in that response, and the corresponding delay in scheduling a meet and confer, will result in the parties not having sufficient time to attempt mutual resolution prior to the date of compliance. A one-week extension would allow the parties more time to work to reach resolution, hopefully avoiding the need for Court involvement.

Please let me know if Vital Farms will agree to a one-week extension of the date of compliance on both subpoenas, from 12/19 (the current date) to 12/26.

Sincerely,
Melissa



**Melissa Alpert**
Associate
K&L Gates LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222-2613
Phone: 412-355-3779
Melissa.Alpert@klgates.com
www.klgates.com

**From:** Abby Meyer <AMeyer@sheppardmullin.com>
**Sent:** Monday, December 12, 2022 6:55 PM
**To:** Alpert, Melissa R. <Melissa.Alpert@klgates.com>
**Subject:** RE: Nicholas A. Usler, et al. v. Vital Farms, Inc., Case No. 1:21-cv-00447-RP (W.D. Tex.)

Melissa,

We hope to have the letter response out to you in the next few days.

I'm not sure that I understand the nature of the extension that you're requesting. We received your objections to the PETA and PETA Foundation subpoenas. I'm not against the concept of an extension but want to understand its purpose before reaching any agreement.

Best,
Abby

**Abby Meyer**
**SheppardMullin** | Costa Mesa
+1 714-424-2811 | ext. 12811

**From:** Alpert, Melissa R. <Melissa.Alpert@klgates.com>
**Sent:** Thursday, December 8, 2022 9:25 AM
**To:** Abby Meyer <AMeyer@sheppardmullin.com>
**Cc:** Alyssa Sones <ASones@sheppardmullin.com>
**Subject:** RE: Nicholas A. Usler, et al. v. Vital Farms, Inc., Case No. 1:21-cv-00447-RP (W.D. Tex.)

Hi Abby,

Nice to electronically meet you as well. Certainly, I will await your written response letter.

Sincerely,
Melissa

**K&L GATES**

**Melissa Alpert**
Associate
K&L Gates LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222-2613
Phone: 412-355-3779
Melissa.Alpert@klgates.com
www.klgates.com

**From:** Abby Meyer <AMeyer@sheppardmullin.com>
**Sent:** Wednesday, December 7, 2022 7:59 PM

9

**To:** Alpert, Melissa R. <Melissa.Alpert@klgates.com>
**Cc:** Alyssa Sones <ASones@sheppardmullin.com>
**Subject:** RE: Nicholas A. Usler, et al. v. Vital Farms, Inc., Case No. 1:21-cv-00447-RP (W.D. Tex.)

Melissa,

Nice to meet you over email. I'll be managing the meet and confer on the PETA and PETA Foundation subpoenas.

We are in the process of drafting a meet and confer letter responding to the objections you submitted. It probably makes the most sense for you to review the letter prior to us getting on the phone. Can we circle back re scheduling once you have the letter in hand?

Best,
Abby

**Abby Meyer**
**SheppardMullin** | Costa Mesa
+1 714-424-2811 | ext. 12811

---

**From:** Alpert, Melissa R. <Melissa.Alpert@klgates.com>
**Sent:** Wednesday, December 7, 2022 8:20 AM
**To:** Alyssa Sones <ASones@sheppardmullin.com>
**Subject:** RE: Nicholas A. Usler, et al. v. Vital Farms, Inc., Case No. 1:21-cv-00447-RP (W.D. Tex.)

Hi Ms. Sones,

I just wanted to follow up on the below, regarding your availability for a meet and confer. I can be available on Friday 12/9 between 10am and 2pm Eastern, and Monday 12/12 between 10am and 2pm Eastern, as well as 4pm-6pm Eastern. Would one of those times work for you?

Sincerely,
Melissa

**Melissa Alpert**
Associate
K&L Gates LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222-2613
Phone: 412-355-3779
Melissa.Alpert@klgates.com
www.klgates.com

**From:** Alpert, Melissa R.
**Sent:** Friday, December 2, 2022 9:05 AM

**To:** 'Alyssa Sones' <ASones@sheppardmullin.com>
**Subject:** Nicholas A. Usler, et al. v. Vital Farms, Inc., Case No. 1:21-cv-00447-RP (W.D. Tex.)

Ms. Sones,

Attached please find nonparties People for the Ethical Treatment of Animals, Inc.'s and Foundation to Support Animal Protection d/b/a PETA Foundation's respective objections to Vital Farms' respective nonparty subpoenas, served 11/18/22.  After Vital Farms has had the opportunity to review and consider these objections, I would welcome the opportunity to meet and confer.  I will be traveling today through Wednesday (12/7), but I am available for a meet and confer starting on Thursday 12/8.  Let me know what date(s) and time(s) would work for you.

Sincerely,
Melissa


**Melissa Alpert**
Associate
K&L Gates LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222-2613
Phone: 412-355-3779
Melissa.Alpert@klgates.com
www.klgates.com

This electronic message contains information from the law firm of K&L Gates LLP. The contents may be privileged and confidential and are intended for the use of the intended addressee(s) only.  If you are not an intended addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this e-mail in error, please contact me at Melissa.Alpert@klgates.com.

Attention: This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

This electronic message contains information from the law firm of K&L Gates LLP. The contents may be privileged and confidential and are intended for the use of the intended addressee(s) only.  If you are not an intended addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this e-mail in error, please contact me at Melissa.Alpert@klgates.com.

This electronic message contains information from the law firm of K&L Gates LLP. The contents may be privileged and confidential and are intended for the use of the intended addressee(s) only.  If you are not an intended addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this e-mail in error, please contact me at Melissa.Alpert@klgates.com.

This electronic message contains information from the law firm of K&L Gates LLP. The contents may be privileged and confidential and are intended for the use of the intended addressee(s) only.  If you are not an intended addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this e-mail in error, please contact me at Melissa.Alpert@klgates.com.

This electronic message contains information from the law firm of K&L Gates LLP. The contents may be privileged and confidential and are intended for the use of the intended addressee(s) only.  If you are not an intended addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this e-mail in error, please contact me at Melissa.Alpert@klgates.com.

This electronic message contains information from the law firm of K&L Gates LLP. The contents may be privileged and confidential and are intended for the use of the intended addressee(s) only.  If you are not an intended addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this e-mail in error, please contact me at Melissa.Alpert@klgates.com.

This electronic message contains information from the law firm of K&L Gates LLP. The contents may be privileged and confidential and are intended for the use of the intended addressee(s) only.  If you are not an intended addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this e-mail in error, please contact me at Melissa.Alpert@klgates.com.