# Exhibit F

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| NICHOLAS USLER, ET AL., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | Civil Case No. 1:21-cv-00447-RP |
| | § | |
| VITAL FARMS, INC., ET AL., | § | |
| | § | |
| Defendants | § | |

**DEFENDANT VITAL FARMS, INC.'S MOTION TO DISMISS UNDER**
**FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6) AND 9(b)**

Defendant Vital Farms, Inc. ("Vital Farms") files its Motion to Dismiss under Federal

Rules of Civil Procedure 12(b)(6) and 9(b) ("Motion"), and states as follows:

## I. Preliminary Statement

This lawsuit is a wolf in sheep's clothing. While dressed-up as a consumer-protection

lawsuit accusing Vital Farms of purportedly making false claims about the humane-nature of its

chicken eggs, what this case is really about is PETA's attempt to impose its self-serving definition

of "humane" on the agriculture industry and society at large, which is composed of millions of

consumers who enjoy eating eggs. PETA believes that the "very idea that hens exist to provide

humans with eggs is speciesist" and that "[b]eing vegan is the only ethical way to eat, and no

compassionate consumer should be duped by marketing gimmicks that claim otherwise."[1]

PETA's extremist agenda in this case is evidenced by the groundless nature of the lawsuit's

wandering, vague, and inconsistent allegations, which are oftentimes contradicted by the

complaint's attachments. The complaint and exhibits show that Vital Farms is an Austin-based

---

[1] The Court may take judicial notice of PETA's press release concerning its involvement in this lawsuit:
https://www.peta.org/blog/class-action-lawsuit-vital-farms-eggs/.

company which cares about animals and that it provides hens a meaningly better life than the confinement they would face in conventional egg farms. For example, Plaintiffs include materials acknowledging that Vital Farms was the first company to utilize a "spoke and wheel" pasture rotation approach to make pasture-raised eggs widely available to consumers. The complaint also concedes that Vital Farms' practices are certified by a non-profit charity, Humane Farm Animal Care ("HFAC"), an organization that is endorsed by the American Society for the Prevention of Cruelty to Animals and the Humane Society of the United States, among others. HFAC publishes and certifies compliance to a comprehensive set of standards to elevate the treatment of egg laying hens above the battery cage confinement in which most such hens spend their entire lives. Because Vital Farms' follows HFAC's "Humane Farm Animal Care Standards (the "Humane Standards"), Vital Farms' eggs are Certified Humane®. The complaint is devoid of any allegations that Vital Farms' adoption and implementation of the Humane Standards does *not* promote humane food production and improve animal welfare or that Vital Farms' eggs are *not* Certified Humane®.

The lawsuit also fails to identify and complain about a *single representation that is either false or actionable as a matter of law.* This glaring absence further underscores the improper motive behind the filing of this case: to stop the production of eggs for human consumption because PETA and it collaborators involved in this case believe everyone should be vegans.[2]

The Court should dismiss each of Plaintiffs' eight causes of action: (1) breach of express warranty under the laws of Texas, California, Florida, Michigan, and New York; (2) common law

---

[2] Because PETA is an organization dedicated to converting people to become vegan, *see, e.g.,* https://www.peta.org/issues/animals-used-for-food/reasons-go-vegan/, the egg business has found itself in PETA's crosshairs for more than two decades. *See In re: Processed Egg Prod. Antitrust Litig.*, No. 08-md-2002, 2019 WL 5656101 (E.D. Penn. Oct. 31, 2019) (noting, among other things, that in 1999 PETA launched a campaign against fast-food companies and grocery stores, demanding increased cage space for egg-laying hens). Although the initial campaign was for increased cage space, PETA now complains that giving hens access to the outdoors is inadequate. PETA's demands will not cease until hens have equal rights with humans, as a tenant of PETA's mission statement is its opposition to "speciesism, a human-supremacist worldview." *See* https://www.peta.org/about-peta/.

fraud under Texas law; (3) fraud by omission under Texas law; (4) violations of the Texas Deceptive Trade Practices—Consumer Protection Act ("TDTPA"), Tex. Bus. & Comm. Code §§ 17.46(b)(5) & (b)(6), 17.50); (5) violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, and the False Advertising Law, Cal. Bus. & Prof. Code § 17500; (6) violations of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), *see* Fla. Stat. § 501.201 *et seq.*; (7) violations of the Michigan Consumer Protection Act; and (8) violations of New York Business Laws §§ 349 and 350-A.

This Motion is based on five arguments. First, all of Plaintiffs' breach of warranty allegations fail, as well as the Texas common law fraud and Texas, California, Florida, Michigan, and New York statutory claims, because the alleged representations at issue are true and also not actionable as a matter of law. Second, the Texas fraud claim and Texas, California, and New York statutory claims are barred by limitations. Third, Plaintiffs' Texas common law fraud by omission cause of action is legally untenable because of the absence of a duty. Fourth, Plaintiffs' Texas common law fraud and Texas, California, Florida, and Michigan statutory claims do not pass muster under Rule 9(b). Finally, the complaint's request for permanent injunctive relief is meritless because Plaintiffs lack a valid cause of action and pleaded themselves and the putative class out of this relief because the complaint alleges facts showing they will not suffer imminent harm or irreparable injury.

## II. Relevant Allegations

### A. Vital Farms.

Vital Farms is an Austin, Texas-based company that sells, among other things, pasture raised eggs.[3] (ECF 1 ("Compl.") ¶¶ 1, 24.) Vital Farms promotes its products by using "Facebook

---

[3] Vital Farms was founded by Co-Defendant Matthew O'Hayer who is now the Executive Chairman. (*Id.* ¶ 25.) Co-Defendant Russell Diez-Canseco is Vital Farms' President, Chief Executive Officer, and a Director. (*Id.* ¶ 26.) Co-

and other social media advertising," and provides post-purchase consumer education through a copy of "Vital Times" in "each cartons [sic] it sells . . . ." (*Id.* ¶¶ 4, 9.) Samples of Vital Times attached to the complaint include pictures of hens roaming a pasture, a cheeky cartoon, and Vital Farms' mission statement, which states:

> OUR MISSION to bring ethically produced food to the table by coordinating a collection of family farms to operate with a well-defined set of agricultural practices that accentuates the humane treatment of farm animals as the central tenet.

(ECF 1-7.)

### 1. Vital Farms' eggs are Certified Humane®.

Vital Farms sources its eggs from farmers, and the eggs are sold to the public. (Compl. ¶¶ 1, 3.) In furtherance of Vital Farms' mission statement, the farmers care for the hens in accordance with HFAC's Humane Standards, which were prepared and adopted by HFAC in collaboration with "[l]eading animal scientists, veterinarians, and producers," such as the prominent American scientist and animal behaviorist Temple Grandin, a proponent for the humane treatment of farm animals. (*Id.* ¶ 46 & ECF 1-3 at p. 4.[4]) HFAC's "mission is to improve the lives of farm animals by providing viable, credible, duly monitored standards for humane food production and assuring consumers that certified products meet these standards." (*Id.* at p. 3.) The Humane Standards state:

> The Humane Farm Animal Care Standards have been developed to provide the only approved standards for rearing, handling, transport and slaughter of Laying Hens for use in the Certified Humane® program. These standards incorporate scientific research, veterinary advice, and the practical experience of farmers. The standards are based on the Royal Society for the Prevention of Cruelty to Animals (RSPCA) guidelines, current scientific information and other practical standards and guidelines recognized for the proper care of animals.
>
> Animal welfare is improved when livestock managers adhere to the following:

---

Defendant Scott Marcus was the company's Chief Marketing Officer. (*Id.* ¶ 27.) Defendants O'Hayer, Diez-Canseco, and Marcus have separately filed a motion to dismiss the claims asserted against them individually.

[4] For the sake of clarity, citations are to the ECF page rather than the page numbers on the bottom of the exhibit.

- Access to wholesome and nutritious feed
- Appropriate environmental design
- Caring and responsible planning and management
- Skilled, knowledgeable, and conscientious animal care
- Considerate handling, transport, and slaughter

(*Id.*)

The Humane Standards govern a wide-range of animal welfare and husbandry issues concerning egg laying hens including, but not limited to, "space allowance," acceptable "pasture raised systems," tipping of hens' beaks, and end-of-cycle handling of the hens.  (*See generally id.*) The granting of "Certified Humane®" status is not withheld because a party sources female chicks from a hatchery that disposes of male chicks.  (*See generally id.*)  As the complaint concedes, the farmers supplying eggs are audited to ensure compliance with the Humane Standards.  (Compl. ¶ 46.)  The Humane Standards set forth requirements for "free range, " "cage-free," and "pasture raised" hens.  (ECF 1-3 at p. 21.)  The complaint does not allege that Vital Farms fails to satisfy any aspect of the Humane Standards.  (*See generally*, *id.*)

## 2. Publicity about pasture-raised eggs and Vital Farms.

*More than five years before* this lawsuit was filed, articles were published about Vital Farms' background and operations.  (*See* ECF 1-1.)  For instance, in a May 28, 2016 article titled "What are 'pasture-raised eggs,' really," Vital Farms stated that it no longer used mobile chicken coops to raise hens and switched to stationary barns and rotated the pastures used by the hens.  (*Id.* at pp. 4-6.)  The article also discusses space allowance between the hens and explains that Vital Farms' hens "come from suppliers that mass cull the males," hens' beaks are "trim[med]," and "they sell spent hens for meat after a brief life." (*Id.* at p. 12.)[5]

---

[5] While the article illustrates that Vital Farms did not hide the fact that it conducted such practices, it should also be noted that such practices conform to the Humane Standards attached to the complaint.  (ECF 1-3.)

In an article published on September 26, 2017 titled, "Here's What Farms Do To Hens Who Are Too Old To Lay Eggs," the author explains that "hens stop laying eggs pretty early on in their lives" and discusses how different egg companies deal with the hens afterwards. (*See generally* ECF 1-4.) Various egg company executives were interviewed, including Vital Farms' Matthew O'Hayer. (*Id.*) Mr. O'Hayer is quoted as follows:

> Most of our flocks are sold live by our family farmers to local families or to pet food companies . . . In the rare instance in which a flock must be depopulated on-farm, contractors are employed by the farmer, who typically use $CO_2$, which is currently the most humane method.

(*Id.* at pp. 4-5.) The article also describes differing viewpoints concerning the best solution for ethically handling older hens. (*See generally id.*) For instance, while Mr. O'Hayer opined that he thought it was more humane to euthanize hens "on the farm at night [and] their life is over quickly," another executive disagreed and explained that he thought it was "more ethical" to "process" the hens "for meat once they slow down their egg production." (*Id.* at pp. 4-5.)

## B.    Plaintiffs and their lawsuit.

The nine individuals filing this lawsuit are from Texas (Andrew Andrada), Florida (Hannah Vossen), Michigan (Nicholas Usler), California (Jon Evans and Kenny Kierman), and New York (Noah Tanz, Charles Sankowich, Burcu Karaca, and Kara Gozde) (collectively, "Plaintiffs"). (Compl. ¶¶ 15-23.) Plaintiffs are alleged purchasers of Vital Farms' eggs and bring this action on behalf of themselves and "seek to represent one nationwide class and five subclasses" consisting of purchasers of Vital Farms' eggs in five specific states where Plaintiffs reside. (*Id.* ¶ 56.) Plaintiffs also "seek to represent a nationwide fraud by omission class." (*Id.*)

Plaintiffs claim they were duped into paying a premium price for Vital Farms' eggs because "Vital markets itself as an ethical company that treats animals in an ethical, humane, and transparent manner[,] [b]ut Vital's marketing is false and misleading . . . ." (*Id.* ¶¶ 2, 15-23.)

6

According to Plaintiffs, "[w]hile Vital provides hens access to pasture, its business model and dictated agricultural practices are not ethical, humane, or transparent" because: (1) Vital Farms' "hens have their beaks 'tipped'"; (2) Vital Farms' "animal care practices ensure that many hens rarely—if ever—venture outdoors, and instead spend most of their time indoors in crowded stationary barns"; (3) Vital Farms "engages in 'end-of-life practices,' including sending hens to 'pet food plant[s]. . . pack[ed] . . . into crates and ship[ped] . . . in trucks hundreds of miles,' after they have lived only 15-20% of their normal life span"; and (4) Vital Farm supports the culling of male chicks at birth because it purchases hens from those participating hatcheries. (*Id.* ¶ 11.)

Plaintiffs vaguely allege that Vital Farms engages in a false marketing campaign in unidentified Securities & Exchange Commission ("SEC") filings, Facebook, "other social medial advertising," and/or in Vital Times, by making the following purported misrepresentations:

a) Photographs of hens outdoors in green grass;
b) 'Vital Farms is an ethical food company';
c) 'Our ethics are exemplified by our focus on the humane treatment of farm animals';
d) 'Vital Farms makes ethical snacking easy';
e) 'Looking for ethically produced food? You've found it.';
f) Vital is 'committed to ethical decision-making';
g) Vital has an 'ethical mission';
h) Vital has a 'mission to bring ethically produced food to the table';
i) The 'central tenet' of Vital's 'mission' is 'the humane treatment of farm animals';
j) '[Vital's] farmers are invested in animal welfare and doing things the right way';
k) Vital acts as 'stewards of our animals'; and
l) 'Our ethics are exemplified by our focus on the humane treatment of farm animals.'

(*Id.* ¶ 39; *see also* ¶ 42 ("Vital employs an 'ethical decision-making model'").)

Plaintiffs allegedly purchased Vital Farms' eggs "on a regular basis" believing "that Vital Farms employed unique humane and ethical farming practices with respect to all of the farmed animals in its supply chain." (*Id.* ¶¶ 15-23.) Plaintiffs do not identify (1) when they purchased

Vital Farms' eggs, (2) what information they each viewed and relied upon when making their purchases, (3) when they viewed the information, and (4) what purportedly false representations were made in the information viewed. (*See generally* Compl.) Nor is there any allegation that any Plaintiff viewed Vital Farms' SEC filings or any specific Facebook or other social media postings. (*See generally id.*) And although Plaintiffs allege they reviewed and were motivated to buy Vital Farms' eggs based "on the box inserts"—that is, Vital Times—Plaintiffs fail to identify which edition(s) of the Vital Times they reviewed, when they reviewed the document in relation to purchasing eggs or how they accessed an in-packaging leaflet before deciding whether to purchase. (*See id*. ¶¶ 15-23.) This omission[6] is important because there were several volumes and issues of Vital Times published and inserted in Vital Farms' egg cartons over the years. (*See* ECF 1-7.)

### III. Argument and Authorities

#### A. Applicable standard under Rule 12(b)(6).

Because the Court is well-aware of and has explained the relevant standard of review for a Rule 12(b)(6) motion to dismiss under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) previously, *see, e.g., Lozano v. Baylor Univ.*, 408 F. Supp. 3d 861, 878 (W.D. Tex. 2019), it is unnecessary for Vital Farms to do so again here.

#### B. Plaintiffs' claims are not based on a representation that is either false or actionable.

Regardless of how Plaintiffs couch their complaint, each cause of action requires the existence of a false or actionable representation. For example, Plaintiffs' breach of warranty claims will not prevail unless there is a statement that is actionable—that is, there must be a

---

[6] Importantly for purposes of this Motion, Plaintiffs also do not allege, among other things, the following: (1) Messrs. O'Hayer, Diez-Canseco, and/or Marcus made any representations directly to Plaintiffs; (2) Vital Farms' eggs are not Certified Humane®; (3) Vital Farms' farmers are not required to follow the Humane Standards; (4) Vital Farms or its farmers do not comply with the practices set forth in the Humane Standards; (5) Vital Farms or its farmers abuse the hens that produce the eggs sold by Vital Farms; or (6) following the Humane Standards does not promote humane food production and improve animal welfare. (*See* Compl.)

positive representation of fact, while vague, imprecise, aspirational, unspecified, and general statements, including statements of opinion, are insufficient as a matter of law.[7]   Likewise, Plaintiffs' Texas common law fraud claim[8] requires a representation that is false and material— that is, a statement that is not imprecise, vague, aspirational, and/or that constitutes an opinion, judgment, probability, or expectation.[9]   Similarly, Plaintiffs' claims under the Texas DTPA and other state statutes must be based on false statements that are not imprecise, vague, or subjective, and that do not constitute opinions, thereby rendering the claims unviable as a matter of law.[10]

---

[7] Texas, California, Florida, Michigan, and New York require that there be an affirmation of fact or promise made by the seller to create an express warranty and an affirmation that is merely opinion, subjective, aspirational, vague, and/or imprecise is insufficient.  *See* Tex. Bus. & Com. Code § 2.313; *Humble Nat'l Bank v. DCV, Inc.*, 933 S.W.2d 224, 229-230 (Tex. App.—Houston [14th Dist.] 1996, writ denied) (Texas law); Cal. Com. Code § 2313; *In re Nexus 6P Prod. Liab. Litig.*, 293 F. Supp. 3d 888, 936 (N.D. Cal. 2018 (recognizing that "generalized, vague, and unspecified assertions" are insufficient to support a California express warranty claim); Fla. Stat. § 672.313; *Aprigliano v. Am. Honda Motor, Inc.*, 979 F. Supp. 2d 1331, 1341 (S.D. Fla. 2013) ("Performance First," "gentle giant," "unbelievably smooth, quiet and vibration free" cannot support Florida express warranty claim because statements are aspirational, opinion, unquantifiable, and/or subjective); Mich. Comp. Laws § 440.2313; *Best Way Expediting, LLC v. Navistar, Inc.*, No. 335085, 2018 WL 2067789, at *6-7 (Mich. Ct. App. May 3, 2018) (recognizing that relative, subjective, and immeasurable statements cannot support a Michigan express warranty claim); N.Y. U.C.C. Law § 2-313; *Mazella v. The Coca-Cola Co.*, No. 7-20-cv-05235, 2021 WL  2940926, at *6-7 (S.D.N.Y. July 12, 2021) (determining that "Slightly Sweet" is not an express warranty because it is vague and thus not material) (New York law).

[8] The elements of fraud in Texas are:  (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.  *Aquaplex, Inc. v. Ranch La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009) (per curiam).

[9] *Id.* at 774; *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337-338 (Tex. 2011); *Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 163 (Tex. 1995); *Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269, 276 (Tex. 1995); *Jefferson v. Phillips*, 534 S.W.2d 168, 171-172 (Tex. Civ. App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.); *see also Markman v. Whole Foods Mkt., Inc.*, No. 1:15-CV-681-LY, 2016 WL 10567194, at *6 (W.D. Tex. Aug. 19, 2016) (aspirational statements are not actionable representations).

[10] *See, e.g., Presidio Enterprises, Inc. v. Warner Bros. Distributing Corp.*, 784 F.2d 674, 678-687 (5th Cir. 1986) (TDTPA); *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 480 (Tex. 1995) (TDTPA); *Jefferson Assocs., Ltd.*, 896 S.W.2d at 163 (TDTPA); *Dowling v. NADW Mktg., Inc.*, 631 S.W.2d 726, 729 (Tex. 1982) (TDTPA); *Autohaus, Inc. v. Aguilar*, 794 S.W.2d 459, 462-6 (Tex. App.—Dallas 1990), *writ denied*, 800 S.W.2d 853 (Tex. 1991) (TDTPA); *People for the Ethical Treatment of Animals v. Whole Foods Mkt. Calif., Inc.* No. 15-cv-04301 NC, 2016 WL 1642577, at *3-4 (N.D. Cal. April 26, 2016) (false advertising claims under Cal. Bus. & Prof. Code § 17200 & Cal. Bus. & Prof. Code § 17500); *Neu v. Terminix Int., Inc.*, No. C 07-6472 CW, 2008 WL 2951390, at *3 (N.D. Ca, July 24, 2008) (same); *Marcus v. Apple Inc.*, No. 14-cv-03824 WHA, 2015 WL 151489, at *5 (N.D. Cal. Jan. 8, 2015) (same); *Fraker v. KFC Corp.*, No. 06-CV-01284-JM (WMC), 2007 WL 1296571, at *3 (S.D. Cal. Apr. 30, 2007) (same); *Thompson v. Procter and Gamble Co.*, No. 18-cv-60107, 2018 WL 5113052, at *2 (S.D. Fla. Oct. 19, 2018) (citing *USA Nutraceuticals Grp., Inc. v. BPI Sports, LLC*, No. 15-cv-80352, 2016 WL 4250668, at *2 (S.D. Fla. Apr. 12, 2016) (FDUTPA); *Williams v. Scottrade, Inc.*, No. 06-10677, at *7 (E.D. Mich. July 24, 2006) (MCPA); *Kulesza v. Wyhowski*, 213 Mich. 189, 193, 182 N.W. 53, 54 (1921) (MCPA); *Mercantile Bank of Michigan v. CLMIA, LLC*, 316777, 2015 WL 630259, at *8 (Mich. Ct. App. Feb. 12, 2015); *Fink*, 810 F. Supp. 2d. at 644 (quoting *Lipton v.*

Here, the complaint includes a list of alleged Vital Farms' misrepresentations. (Compl. ¶ 39; *see also id.* ¶ 42.)  But as demonstrated in the table below, and then explained in more detail, Vital Farms' alleged representations are true and not actionable as a matter of law.

| Misrepresentations Alleged by Plaintiffs | Why Representations are True and/or Not Actionable |
|---|---|
| "Photographs of hens outdoors in green grass" | <ul><li>No allegation that the photos are not Vital Farms' hens standing in the pastures; and</li><li>Plaintiffs concede the representation is true (Compl. ¶¶ 2, 11, 46).</li></ul> |
| "The 'central tenet' of Vital's 'mission' is 'the humane treatment of farm animals'";<br><br>"[Vital's] farmers are invested in animal welfare and doing things the right way";<br><br>"Vital acts as 'stewards of our animals'"; and<br><br>"Our ethics are exemplified by our focus on the humane treatment of farm animals." | <ul><li>Vital Farms and its farmers practice and satisfy the Humane Standards attached as Exhibit 3 to the complaint;</li><li>Plaintiffs do not allege Vital Farms' hens are treated in a manner inconsistent with the Humane Standards or mistreated in any way while in Vital Farms' farmers' care (*See generally* Compl.); and/or</li><li>Statements are subjective, are opinions, and/or lack specificity.</li></ul> |
| "Vital Farms is an ethical food company";<br><br>"Vital Farms makes ethical snacking easy";<br><br>"Looking for ethically produced food? You've found it.";<br><br>"Vital is 'committed to ethical decision-making'";<br><br>"Vital has an 'ethical mission'";<br><br>"Vital has a 'mission to bring ethically produced food to the table'"; and<br><br>"Vital employs an 'ethical decision-making model.'" | <ul><li>Statements are subjective, are opinions, lack specificity, and/or are aspirational.</li></ul> |

1. **Vital Farms' representations are plainly true.**

   a. **Pasture raised.**

The first alleged misrepresentation concerns "[p]hotographs of hens outdoors in green grass."  (*Id.* ¶ 39.)  But Plaintiffs concede the hens have access to grass or pasture.  (*Id.* ¶¶ 2, 11,

---

*Nature Co.,* 71 F.3d 464, 474 (2d Cir. 1995)) (New York); *Basquiat ex rel. Estate of Basquiat v. Sakura Int'l,* No. 04 Civ. 1369(GEL), 2005 WL 1639413, at *5 (S.D.N.Y. July 5, 2005) (New York).

46.)   Plaintiffs do not allege the photos of the hens in pastures (*see* ECF 1-7 & 1-8) are false or that those hens are not producing Vital Farms' eggs sold to the public.  (*See generally* Compl.)[11]

### b.  Beak tipping, end-of-cycle practices, and the hatcheries.

All of Vital Farms' representations are true. Importantly, at least four representations of which Plaintiffs complain are uncontradicted by the pleading—*i.e.*, they are true for the purposes of this Motion and therefore unactionable.  Plaintiffs identify these statements: (1) "[t]he 'central tenet' of Vital's 'mission' is the humane treatment of farm animals'; (2) "'[Vital's] farmers are invested in animal welfare and doing things the right way'"; (3) "Vital acts as 'stewards of our animals'"; and (4) "'[o]ur ethics are exemplified by our focus on the humane treatment of farm animals.'"  As stated above, Vital Farms' and its farmers' practices, as made clear on the face of every package of Vital Farms' eggs, are guided by the Humane Standards and audited by certifiers. The complaint does not include any allegations that the hens are treated in a manner inconsistent with the Humane Standards, or that the hens are mistreated in any way while in Vital Farms' farmers' care.  (*See generally* Compl.)

To the extent Plaintiffs allege that beak "tipping" is inhumane and thus that Vital Farms' advertising is false or deceptive, they have not identified any false statement made by Vital Farms. The Humane Standards specifically address beak "tipping," provide pictures demonstrating acceptable tipping or trimming, prohibit "[d]ebeaking," and recognize that "tipping" serves a

---

[11] To the extent Plaintiffs intend to imply that Vital Farms misleads the public by sometimes keeping hens indoors, the Humane Standards affixed to the complaint, which establish "Pasture Raised Standards" (ECF 1-3), expressly recognize that hens may be "kept indoors at night for protection from predators." (*Id.* at pp. 21-22.)  The Humane Standards also offer two definitions for "pasture raised" hens, with each definition dependent upon the season/weather where the hens are located.  If the season permits, hens must have "access" to the pasture through exits from houses for 12 months of the year; if the seasonal temperature is below 32 degrees, hens must be kept indoors during such weather. (*Id.* at pp. 21-22.) Plaintiffs neither allege that Vital Farms' "network" of farmers are not required to follow nor refuse to follow the Humane Standards. (*See generally* Compl.)  Plaintiffs also do not allege that the hens are raised inconsistent with the Humane Standards. (*See generally id.*)  In fact, Plaintiffs admit that the spacing of birds in the poultry houses has been verified and is consistent with the Humane Standards. (*Id.* ¶ 46.)  In short, Vital Farms' representations are true.

greater good by serving as a measure to prevent destructive conduct such as cannibalism. (ECF 1-3 at pp. 31 & 41-42.) According to the Humane Standards, "[t]he pain and suffering of the hens that are being pecked to death is appalling and may quickly affect a considerable portion of the flock." (*Id.*) Thus, tipping or trimming the hens' beaks is a recognized humane practice.

Similarly, Plaintiffs contend that Vital Farms' and its farmers' "end-of-life practices" render the company's advertising false. But the Humane Standards show that Vital Farms' practices are not unethical or inhumane, as the Humane Standards approve of "[c]onsiderate handling, transport, and slaughter" (ECF 1-3 at p. 1), and the complaint does not include any allegations showing that Vital Farms' or its farmers' practices conflict with the Humane Standards.

Finally, the above-referenced representations are not false merely because Vital Farms or its farmers source female chicks from hatcheries that may kill male chicks. First, the Humane Standards do not preclude a party like Vital Farms from being Humane Certified® because female chicks are sourced from a hatchery that engages in such practices. (*See generally* ECF 1-3.) Next, even Plaintiffs concede Vital Farms has led the fight against chick culling by investing in technology that would allow for rapidly determining the sex of a chicken embryo to end the practice of culling male chicks—but the technology was not capable of doing so, resulting in a lawsuit over the investment. (Compl. ¶ 43(c)(ii) & ECF 1-6.) Accordingly, Plaintiffs' allegations contradict their assertion that Vital Farms' advertising is false. And contrary to Plaintiffs' accusation that Vital Farms is not invested in animal welfare, their allegations demonstrate that Vital Farms made a substantial investment in a potential technology to advance its existing practices promoting animal welfare, all of which meet the Humane Standards.

### 2. Other representations are not actionable as a matter of law.

Plaintiffs also allege Vital Farms made misrepresentations by using the word "ethical" in its advertising (Compl. ¶¶ 39, 41, and 42), but representations based on the use of the word

"ethical," or any derivative of thereof, render the statement imprecise, subjective, and unactionable opinion. Consequently, the following statements Plaintiffs claim support their breach of warranty, Texas state law fraud, and state statutory claims are not actionable as a matter of law: (1) "Vital Farms is an ethical food company"; (2) "Our ethics are exemplified by our focus on the humane treatment of farm animals"; (3) "Vital Farms makes ethical snacking easy"; (4) "Looking for ethically produced food? You've found it."; (5) Vital Farms is "committed to ethical decision-making"; (6) Vital Farms has an "ethical mission"; (7) Vital Farms has a "mission to bring ethically produced food to the table"; (8) "Our ethics are exemplified by our focus on the humane treatment of farm animals"; and (9) Vital Farms employs an "ethical decision-making model."[12]

Further, to the extent the claims are based on Vital Farms' statements regarding the company's and/or its farmers' "missions," those claims are likewise barred because such statements are vague, lack specificity, constitute opinions, and are merely aspirational.[13]

In sum, without a false or actionable representation upon which to perch their breach of warranty, Texas common law fraud, or state statutory claims, each of these claims should be dismissed. Also, any attempt to amend would be futile because there is no actionable fraud to allege; accordingly, the claims should be dismissed *with prejudice*.

## C.  Plaintiffs' Texas common law fraud by omission claim is legally untenable.

The Court should dismiss with prejudice Plaintiffs' fraudulent concealment claim[14] because Vital Farms has no duty of disclosure. Texas law has never imposed such a duty in the

---

[12] *See also* Compl. ¶ 76 ("Vital and its farmers 'believe in ethical food'" and "Vital and its farmers are 'doing the right thing'").

[13] *See, e.g., Markman*, 2016 WL 10567194, at *6 (aspirational statements are not actionable representations); *see also Aprigliano*, 979 F. Supp. 2d at 1341 (recognizing that aspirational statements are not actionable).

[14] Fraudulent concealment is a claim for fraud by omission and its elements are: (1) Vital Farms concealed certain facts from Plaintiffs; (2) Vital Farms had a duty to disclose the facts to Plaintiffs; (3) Vital Farms knew Plaintiffs were ignorant of the facts and did not have an equal opportunity to discover the facts; and (4) Plaintiffs relied on Vital Farms non-disclosure. *White v. Zhou Pei*, 452 S.W.3d 527, 537 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

consumer false advertising context.  This fact was recently recognized in *Pierce v. North Dallas Honey Co.*, No. 3:1-CV-00410-X, 2020 WL 1047903, at *4 (N.D. Tex. Mar. 3, 2020).

In *Pierce*, consumers sued North Dallas Honey Company complaining that its premium honey sold under the name of "Nature's Nate" falsely advertised its honey as "'100% Pure Raw and Unfiltered Honey'" when the honey actually contains syrup and "is heated to a level that destroys enzymes that make honey raw." *Id*. at *1.  Among other claims, the consumer plaintiffs alleged a Texas state law fraud by omission claim, but the Court dismissed the claim with prejudice because North Dallas Honey Company had no duty to disclose the underlying facts:

> Nature Nate's contends there is no duty to disclose here.  [Plaintiffs] respond that Texas courts have recognized a duty to disclose 'when one party voluntarily discloses information, which gives rise to the duty to disclose the whole truth.'  But the courts have imposed such duties (that expose a defendant to punitive damages) in such cases as real estate transactions, commercial contracts, or securities.  Implying a duty here, [where the plaintiffs] identified none, would subvert carefully crafted products liability and consumer protection law.  The Court declines such a broad invitation.  Because this pleading defect is insurmountable, the Court **GRANTS** the motion to dismiss as to the fraudulent concealment claim and **DISMISSES THE CLAIM WITH PREJUDICE**.

(*Id.* at *4) (citations omitted) (emphasis in original).

Here, Plaintiffs' allegations do not involve a real estate transaction, a commercial contract, or securities.  Consequently, Vital Farms has no duty of disclosure and the Court should refuse Plaintiffs' attempt to manufacture such a duty by dismissing the claim *with prejudice*.[15]

## D.   Limitations bar Plaintiffs' fraud and Texas, California, and New York statutory claims.

The Court should also dismiss with prejudice the fraud, TDTPA, and California and New

---

[15] Nor is Texas alone in this holding.  Although Plaintiffs' fraud by omission claim is based solely on Texas law, it is notable that PETA attempted to prosecute a false advertising claim against Whole Foods by alleging fraud by omission under California law, but the district court dismissed the claim with prejudice because no duty is owed unless a consumer safety issue is involved, which is not alleged here. *See People for the Ethical Treatment of Animals*, 2016 WL 1642577, at *4. The *PETA* opinion further shows the lack of a duty to disclose in consumer cases.

York statutory claims because they are barred by limitations.[16]  The Texas state law fraud claim's limitations period is four years,[17] the TDTPA's limitations period is two years[18] and the California and New York statutes' limitations periods are three years.[19]

Plaintiffs filed this lawsuit on May 20, 2021.  When boiled down to its essence, Plaintiffs complain of two representations: (1) Vital Farms represented that it is an "ethical" company; and (2) Vital Farms represented its hens as pasture raised.  (Compl. ¶¶ 39, 41, and 42.)  Attempting to demonstrate that Vital Farms' representations were false, Plaintiffs point to several exhibits attached to the complaint.  However, the exhibits show that Plaintiffs should have discovered, in the exercise of reasonable diligence, the alleged misrepresentations well before the lawsuit was filed.   These undeniable facts are clearly and unambiguously set forth in the complaint's attachments, which show the following:

*Exhibit 1:* Plaintiffs claim Exhibit 1 shows that Vital Farms' ethical practices "are not as advertised."  (*Id.* ¶ 11(a).)  The article's author writes that Vital Farms uses "routine industry practices that I suspect many consumers would find objectionable, if they only knew," such as Vital Farms sourcing its hen chicks "from suppliers that mass cull the males", "trim[ming] the hens' beaks", and selling spent hens for meat after a brief life.  (ECF 1-1 at 12.)  The online article from *The Counter* website is dated May 18, 2016—*five years before* Plaintiffs filed this lawsuit. (*Compare* ECF 1-1 *with* Compl.)    Accepting as true Plaintiffs' allegation that Exhibit 1

---

[16] Rule 12(b)(6) is a valid means to raise a statute of limitations defense.  *Bush v. United States*, 823 F.2d 909, 910 (5th Cir. 1987).  A court should dismiss based on the statute of limitations if that bar to relief appears on the face of the complaint or other appropriately considered materials.  *Garrett v. Commonwealth Mortg. Corp. of Am.*, 938 F.2d 591, 594 (5th Cir. 1991).  Appropriate materials include attachments to the complaint.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007).

[17] Tex. Civ. Prac. & Rem. Code § 16.004(a)(4).

[18] Tex. Bus. & Com. Code Ann. § 17.565; *Burns v. Thomas*, 786 S.W.2d 266, 267 (Tex. 1990).

[19] Cal. Code Civ. Proc. § 338(a); *Rodarte v. Philip Morris, Inc.*, No. CV03-0353FMC, 2003 WL 23341208 *1 (C.D. Ca, June 23, 2003); Cal. Civ. Code § 1783; *Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138, 1148 (N.D. Cal. 2005); N.Y. C.P.L.R. 214(2); *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 778 (2012).

demonstrates misrepresentations in Vital Farms' advertising, then Plaintiffs were on notice of the alleged misrepresentations by May 18, 2016, and should have filed the fraud claim before May 18, 2020, the TDTPA claim by May 18, 2018, and the California and New York statutory claims by May 18, 2019. Accordingly, Plaintiffs pleaded themselves out of their fraud, TDTPA and California and New York statutory claims.

*Exhibit 2:* Plaintiffs claim Exhibit 2 shows that Vital Farms' hens are not pasture raised, as advertised by Vital Farms. (*See* Compl. ¶ 11(b).) Exhibit 2 is an article from the *Seven Sons* website titled: "The Surprising Truth Behind 'Pasture-Raised' Eggs." (ECF 1-2.) Although Exhibit 2 does not include a date, retrieving the article from the *Seven Sons* website readily shows that the article was uploaded on August 19, 2017, as illustrated by the screenshot below[20]:



Therefore, accepting as true Plaintiffs' allegation that Exhibit 2 demonstrates that Vital Farms' hens are not pasture raised, as advertised, Plaintiffs were on notice of the alleged misrepresentation by August 19, 2017, and thus should have filed their TDTPA claim by August 19, 2019 and their California and New York statutory claims by August 19, 2020; hence, the claims are barred.

---

[20] Pursuant to Federal Rule of Evidence 201, Vital requests that the Court take judicial notice of the Sevensons.net website, which is the source of Plaintiffs' Exhibit 2. The site, and the image above, indicate that the article was posted on August 19, 2017, and can be found at: https://sevensons.net/blog?page=6.

*Exhibit 4:* Plaintiffs claim Exhibit 4 demonstrates that Vital Farms is not an ethical or humane company because it sends spent hens to pet food manufacturers. (Compl. ¶ 11(c).) Exhibit 4 is an online article from the *Huffington Post*, which was initially uploaded on September 26, 2017, and updated on May 15, 2018. (ECF 1-4.) Accepting Plaintiffs' allegation as true that Exhibit 4 demonstrates that Vital Farms is not an ethical or humane company, then Plaintiffs were required to file their TDTPA claim by September 26, 2019, and the California and New York statutory claims by September 26, 2020. Again, Exhibit 4 bars the claims.

In sum, Plaintiffs' exhibits demonstrate Plaintiffs should have discovered, in the exercise of reasonable diligence, the alleged false statements before the limitations periods applicable to their fraud and Texas, California, and New York statutory claims. Thus, these claims are barred.[21]

## E. Plaintiffs' claims fail under Federal Rule of Civil Procedure 9(b).

If Plaintiffs' Texas common law fraud and the Texas, California, Florida, and Michigan statutory claims are not precluded for the reasons identified and briefed above, which they are, the Court should still dismiss these claims for failure to satisfy Rule 9(b)'s heightened pleading standards.[22] Because Rule 9(b) applies to all averments of fraud and Plaintiffs' Texas, California, Florida, and Michigan statutory claims are grounded in fraud, sound in fraud, rest upon fraud and are based on essentially the same facts as Plaintiffs' Texas common law fraud claims, Plaintiffs must meet the Fifth Circuit's strict application of Rule 9(b)'s heightened pleading requirements.[23]

---

[21] *See e.g.*, *Diamond Beach Owners Assoc. v. Stuart Dean Co., Inc.*, No. 3:18-CV-00173, 2018 WL 7081232, at *3 (W.D. Tex. Dec. 19, 2018) (finding that TDTPA claims based on alleged false representations in advertisements were time barred and subject to dismissal under Rule 12(b)(6)); *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117 (C.D. Cal 2010) (dismissing California statutory claims based on limitations because plaintiffs failed to plead any facts that would toll limitations); *Gould v. Helen of Troy Ltd.*, No. 16 Civ. 2033, 2017 WL 1319810 (S.D. N.Y. March 30, 2017) (dismissing Sections 349 and 350 claims based on statute of limitations).

[22] This Court set forth the "heightened pleading standard" for claims under Rule 9(b) in *Rivera v. First Franklin Fin. Corp.*, No. 1:17-CV-1064-RP, 2019 WL 2098089, at *4 (W.D. Tex. Mar. 7, 2019). Thus, Vital Farms will not reiterate that standard here.

[23] *See, e.g.*, *Buraimoh v. BMW of N. Am.*, No. 1:20-CV-0019-RP, 2020 WL 7711823, at *4 (W.D. Tex. Dec. 29, 2020), *adopted*, 2021 WL 2189176 (Jan. 26, 2021) (Rule 9(b) applied to TDTPA); *Gonzalez v. State Farm Lloyds*, 326 F.

Here, Plaintiffs fail to satisfy the Fifth Circuit's test because they do not identify the specific representations upon which they allegedly relied. At most, Plaintiffs claim they read the "box inserts promising 'humane treatment of farm animals' and showing photographs of hens outdoors on green grass" (Compl. ¶¶ 15-23), but the Vital Times leaflets enclosed in egg cartons are published periodically, and Plaintiffs do not identify the volume and issue of the Vital Times they read or what pictures or representations were in the issues they received and reviewed.

Second, the complaint fails to state with particularity when Plaintiffs viewed any specific information. Instead, the complaint generally states Plaintiffs "purchased Vital eggs on a regular basis," but does not disclose specifically when Plaintiffs viewed any purportedly misleading statements. In *Cincinnati Life Ins. Co. v. Breyer*, 722 F.3d 939, 950 (7th Cir. 2013), the court found that allegations that misrepresentations occurred sometime "beginning in July 2007 and continuing until January 28, 2008" failed to describe the "when" with sufficient particularity under Rule 9(b). Here, Plaintiffs' allegations are even less specific.

Third, Florida-based Plaintiff Hannah Vossen and New York resident Plaintiff Noah Tanz vaguely allege they reviewed Vital Farms' "social media marketing" as well as the "box inserts" (Compl. ¶¶ 19-20), but neither Plaintiff identifies with specificity what "social media marketing" they are referring to (not even the particular platform), the dates they referred to the social media marketing, or even what statements were in the "social media marketing." (*Id.*)

---

Supp. 3d 350 (S.D. Tex. 2017) (same); *GCC Rio Grand, Inc. v. Paso Del Norte Ready-Mix, Inc.*, No. EP-14-CV-00100-FM, 2014 WL 12863360, at *6 (W.D. Tex. June 26, 2014) (same); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125-27 (9th Cir. 2009) (applying Rule 9(b) to California Business and Professions Code § 17200); *Vess v. Civa-Geigy Corp. USA*, 317 F.3d 1097, 1102-06 (9th Cir. 2003) (applying Rule 9(b) to California Business and Profession Code § 17500); *People for the Ethical Treatment of Animals*, 2016 WL 1642577, at *2-3; *Janney v. Mills*, 944 F. Supp.2d 806, 818 (N.D. Cal. 2013); *Hughes v. Ester C Co.*, 930 F. Supp. 439, 465 (E.D.N.Y. 2013); *Nutraceuticals Grp. Inc. v. BPI Sports, LLC*, No. 15-CIV-80352, 2016 WL 4254257, at *3 (S.D. Fla. Feb. 16, 2016) (FDUTPA claim must satisfy Rule 9(b) where claim sounds both in tort and fraud); *D.H.G. Properties, LLC*, No. 3:09-cv-735-J-34JRK, 2010 WL 5584464, at *5 (M.D. Fla. Sept. 28, 2010); *Stires v. Carnival Corp.*, 243 F. Supp. 2d 1313, 1322 (M.D. Fla. 2002); *Williams v. Scottrade, Inc.*, No. 06-CV-10677, 2006 WL 2077588, at *7 (E.D. Mich. July 24, 2006) (dismissing MCPA claim involving false advertising allegations under Rule 9(b)).

Fourth, the complaint refers to Vital Farms' SEC filings (*see, e.g., id.* ¶¶ 4, 11, 24, 32, & 42), filings with the Delaware Secretary of State (*see id.* ¶ 41), Facebook posts (*id.* ¶ 4), and snapshots from Vital Farms' Instagram account (ECF 1-8), but Plaintiffs do not allege they ever reviewed these materials, when they reviewed such materials, or what allegedly false information was contained in those materials that they relied upon. (*See generally* Compl.)

Finally, Plaintiffs contend that "Vital and Defendant O'Hayer" misrepresented "that they 'maintain a close connection' to a 'team of scientists' developing technology that will allow farmers to determine the sex of chickens while still in the egg and thus not to [sic] to hatch male chickens" (*id.* ¶ 43), but Plaintiffs fail to specify when, where, or how that representation was made or is false, as well as how they relied on the statement before purchasing Vital Farms' eggs.[24]

Given the lack of particularity in the complaint, Plaintiffs' Texas common law fraud cause of action and the various state statutory claims should be dismissed.

## F. Plaintiffs cannot obtain injunctive relief.

Plaintiffs' request for permanent injunctive relief (*see* Compl. at Prayer, p. 38) is fatally flawed for at least three reasons. First, Plaintiffs must plead and show a valid cause of action to obtain injunctive relief. *Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex. 1993). As explained above, Plaintiffs have not asserted (and cannot assert) a viable cause of action against Vital Farms (or any of the company's co-defendants). Thus, injunctive relief is not an available remedy.

Second, Plaintiffs must show they will suffer "imminent harm" if the injunctive relief is not entered. *O'Conner v. Smith*, No. 3-10-77, 2010 WL 4366914, at *3, (S.D. Tex. Oct. 28, 2010) (citing *Oklahoma Sur. Co. v. Williams*, 483 F.Supp.2d 541, 548 (W.D. Tex. 2006)). Here, the purported "harm" alleged is that Plaintiffs paid premium prices for Vital Farms' eggs. (*See e.g.,*

---

[24] Plaintiffs' reference to the pleading from the Ovabrite litigation (ECF 1-6) is peculiar. That pleading illustrates that Vital Farms did, in fact, have a relationship aimed at developing technology to determine a chick's sex before hatching.

Compl. ¶¶ 1, 5, 15-23, 55.)  Plaintiffs do not allege that they or any member of the putative class

is facing imminent future harm caused by continuing to purchase Vital Farms' eggs in the future

if they do not receive injunctive relief.  In fact, Plaintiffs allege that they will ***not*** purchase Vital

Farms' eggs in the future unless the company changes its practices.  (*Id.* ¶¶ 15-23 (Plaintiffs

"would only consider Vital eggs in the future if Vital were to treat farmed animals in a manner

consistent with Vital's advertising").)  Hence, extraordinary relief in the form of a permanent

injunction is improper.

Finally, Plaintiffs must show that available remedies, such as monetary damages, are

inadequate.  *ITT Educational Serv., Inc. v. Arce*, 533 F.3d 342, 347 (5th Cir. 2008).  Here, Plaintiffs

allege no facts that, if true, could demonstrate that any harm is irreparable.  Indeed, Plaintiffs' chief

complaint is that they paid premium prices for Vital Farms' eggs in the past.  (*See* Compl. ¶¶ 1, 5,

15-23.)  Plaintiffs do not explain how or why money damages would be inadequate to compensate

them for their past egg purchases.  Accordingly, the Court should dismiss with prejudice Plaintiffs'

request for permanent injunctive relief.

### IV.  Conclusion

For all the reasons set forth above, Vital Farms requests that all Plaintiffs' claims be

dismissed with prejudice because their deficient allegations cannot be cured, this lawsuit has been

brought for improper purposes, and a further attempt to amend would unduly delay a resolution of

this groundless dispute.  *See Matter of Southmark Corp.*, 88 F.3d 311, 314-15 (5th Cir. 1996).

However, if the Court is unwilling to dismiss the causes of action with prejudice, the Court should

nevertheless dismiss the claims without prejudice under Rule 9(b).  Vital Farms also requests all

other and further relief to which it may be entitled either at law or in equity.

Respectfully submitted,

/s/ *Clayton E. Bailey*
Clayton E. Bailey, Esq.
Texas State Bar No. 00796151
Benjamin L. Stewart, Esq.
Texas State Bar No. 24046917
Jason R. Marlin, Esq.
Texas State Bar No. 24050989

BAILEY BRAUER PLLC
Campbell Centre I
8350 N. Central Expressway, Suite 650
Dallas, Texas 75206
Tel:  (214) 360-7433
Fax:  (214) 360-7435 (fax)
Email:  cbailey@baileybrauer.com
          bstewart@baileybrauer.com
          jmarlin@baileybrauer.com

**ATTORNEYS FOR DEFENDANT
VITAL FARMS, INC.**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 26th day of July 2021, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's system.

/s/ *Clayton E. Bailey*
Clayton E. Bailey