# Exhibit J

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| NICHOLAS USLER, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Civ. Action No. 1:21-CV-00447-RP |
| | ) | |
| VITAL FARMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT VITAL FARMS, INC.'S MOTION TO QUASH OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER AGAINST SUBPOENA TO PREACHER LLC

Defendant Vital Farms, Inc. ("Vital Farms") submits this *Motion to Quash or, in the Alternative, for Protective Order Against Subpoena to Preacher LLC* (the "*Motion*"), and respectfully submits to the Court as follows:

I. **INTRODUCTION**

In contravention of Rules 45 and 26, Plaintiffs served certain subpoenas seeking documents that are not relevant to the claims and defenses in the case and are confidential and proprietary to Vital Farms (let alone unduly burdensome for the nonparties). Importantly, Vital Farms does not contend that every request in the subpoenas to five of Vital Farms' nonparty business partners[1] is improper. But to the extent the requests seek information about matters not relevant to the case – *and especially when such information is confidential* or should have been sought first from Vital Farms – the subpoenas should be quashed or modified, or a protective order should be issued limiting production. The subpoenas seek extensive irrelevant information outside the scope of this lawsuit which involves Vital Farms' marketing of eggs; nothing else. This Motion is a limited measure to protect Vital Farms against requests to Preacher that go too far.[2]

The Class Action Complaint ("Complaint") relates exclusively to Vital Farms' treatment of chickens in the production of eggs. Indeed, "egg" is mentioned 189 times in the Complaint, "chicken" 26 times, "hen" 86 times, but "butter," "ghee," "cows," and "dairy" are not mentioned once. And not one of the nine plaintiffs alleged they purchased anything other than eggs. Plaintiffs filed a case about shell eggs. Vital Farms thus seeks to have the Subpoena limited to shell eggs. Vital Farms does not dispute that information sought by the Subpoena related to egg products may be relevant, and thus potentially discoverable. The existing Confidentiality and Protective Order's protections are designed to protect Vital Farms' legitimate privacy interests in those documents.

However, to the extent the Subpoena seeks irrelevant documents and information entirely unrelated to the allegations of false shell egg advertising, Vital Farms' commercial confidentiality

---

[1] Humane Farm Animal Care ("HFAC"), Zocalo Design & Advertising Inc., Market Track, LLC ("Market Track"), Krupa Consulting, Inc. ("Krupa"), and Preacher LLC ("Preacher").
[2] Vital Farms seeks to transfer to this Court its similar motions as to Market Track and Krupa.

and privacy interests outweigh the scant need for such materials.  The Court should thus quash the Subpoena or modify it to exclude those requests.  The challenged requests contain no self-restraint to seek only relevant documents and information about Vital Farms eggs.  Rather, their breadth would sweep up information related to its other products, like butter and ghee, derived from entirely different animals—cows—about which there is not a single allegation in the Complaint. For any such documents sought by the Subpoena, any purported need for production asserted by Plaintiffs is outweighed by the harm caused to Vital Farms because the documents will not be admissible in this case, and will lead to any information relevant to the parties' claims or defenses.

Keeping a tight rein on relevance is particularly important in this case, where Plaintiffs' counsel includes the PETA Foundation, the captured legal arm of People for the Ethical Treatment of Animals, Inc. ("PETA").  PETA actively advocates to steer Vital Farms' customers away from their products and toward PETA-approved products through the use of PETA's services, and in so doing actively competes against Vital Farms' commercial interests.  The potential harm to Vital Farms has already been previewed in this action.  The individual Plaintiffs have unequivocally stated they intend to expand the allegations, or assert new allegations entirely, based on documents already produced by nonparty HFAC.  The PETA Foundation lawyer for Plaintiffs even refused to meet and confer in good faith over these subpoenas saying he would only negotiate scope with the subpoenaed parties, who are Vital Farms' business partners.  Vital Farms believes in good faith this Subpoena, and Plaintiffs' refusal to discuss its scope with Vital Farms, is either primarily or secondarily aimed at allowing Plaintiffs and PETA to conduct a fishing expedition to identify new claims against Vital Farms.  As far as Vital Farms can tell, the bait was cast to catch facts about entirely different food products derived from an entirely different species of animal—cows.  This is not a permissible use of discovery.  For these reasons and the reasons set out below, Vital Farms respectfully requests that the Court quash or modify the Subpoena or, in the alternative, enter a

protective order against the Subpoena preventing disclosure of documents and information that are confidential to Vital Farms and outside the scope of discovery.

## II. FACTUAL BACKGROUND

### A. Description Of The Case

This is a false advertising case about the production of chicken eggs. The Complaint alleges Vital Farms "sold millions of eggs based upon its representations that its business is humane and ethical, when in fact it engages in or allows in its chain of commerce practices that are inhumane, unethical, outrageous, and unconscionable." ECF No. 1 ¶¶ 13, 75-125. As a false advertising case, the claims center on the egg advertising itself and what consumers believe about the claims made regarding eggs. Specifically, Plaintiffs allege Vital Farms uses unethical or inhumane practices in trimming hens' beaks, has hens that inadequately access outdoor pastures, encourages a hens to lay eggs at too-high a rate, kills hens too early in their lives, and culls male chicks days after they hatch. *Id.* ¶ 11(a)-(e). While Plaintiffs knew when filing the Complaint that Vital Farms sells not only the challenged pasture-raised eggs, but also butter and ghee (*see* ECF No. 1-8 at 2), the Complaint only alleges any wrongful or relevant conduct with respect to shell eggs and the chickens that make them (*see* ECF No. 1 ¶¶ 1-14). There is not one cow allegation.

While this case is filed by individual consumer-plaintiffs, it is materially supported by advocacy group PETA. *See* Declaration of Alyssa Sones ("Sones Decl.") ¶ 9, Ex. E. In addition to supplying lawyers to represent the individual consumer-plaintiffs in this action, PETA is directly involved in the case. PETA has, at a minimum, assisted in building the Plaintiffs' substantive case and used its platform to market the lawsuit to its audience (while asserting that the allegations are factual, not just allegations). *Id.* PETA's marketing calls on its audience to stop buying shell eggs from Vital Farms and, instead, to "go vegan" with PETA's "help." *Id.* PETA's advertising also suggests that, just as it says eggs cannot be made in an ethical or humane way, neither can any

animal-based products. *Id.* As a result, PETA's advocacy mission is clearly broader than attacking Vital Farms' egg business; it also encompasses Vital Farms' other lines of business. By actively seeking to convince Vital Farms customers to permanently stop purchasing Vital Farms' products and, instead, use PETA's services to switch to PETA-approved products, PETA engages in market competition with Vital Farms. Here, PETA uses the Plaintiffs as its unsuspecting proxies, while apparently driving this action and aiming to use discovery to try to find new claims about different products to bring against Vital Farms.[3] This is not the purpose of discovery.

**B.     Discovery In The Case**

On July 12 and 27, 2022, Plaintiffs served their first sets of requests for production and interrogatories, respectively, on Vital Farms. *Id.* ¶ 4, Exs. A-B. In response, Vital Farms produced hundreds of documents and is reviewing another nearly 40,000 documents, culled using search terms from over 500,000 documents, for privilege, responsiveness, and confidentiality. *Id.*

Plaintiffs also subpoenaed various nonparties' documents. Plaintiffs first subpoenaed HFAC, a certifying entity that permits Vital Farms to use its "Certified Humane" logo on Vital Farms egg packaging. *Id.* ¶ 5. While the document requests to HFAC were much more narrowly tailored to the relevant issues in this case related to the treatment of chickens, the parties have seen that even those requests, without court intervention, resulted in HFAC producing irrelevant documents related to other product lines like butter and ghee. *Id.* Following Vital Farms' designation of those documents "Confidential" under the Confidentiality and Protective Order, Plaintiffs challenged, *inter alia*, whether Vital Farms had any right at all to designate documents produced by a nonparty confidential in this case. *See id.* ¶ 5, Ex. C. In this meet and confer

---

[3] Vital Farms is a principal target of PETA because it does produce eggs in a more humane manner than large factory farms, which makes the production Vital Farms eggs more "palatable" to consumers, thus undermining PETA's ideology of strict veganism.

process, Plaintiffs stated that the documents produced by HFAC "likely justify further Complaint amendments," signaling their intent to use discovery to broaden claims against Vital Farms. *Id.* While the parties have reached an accommodation as to this particular dispute, Plaintiffs continue to reserve their contention that Vital Farms' designation of nonparty documents is improper. *Id.* An interpretational chasm appears to remain, that may require future court intervention and signals increased risk to Vital Farms in any new confidential documents produced by nonparties. *Id.* On October 27, 2022, Plaintiffs served notice to Vital Farms of their intent to subpoena, *inter alia*, Market Track, Preacher, and Krupa. *Id.* ¶ 6, Ex. D. Preacher's Subpoena is at issue here.

Preacher, a creative agency, provides services to Vital Farms including brainstorming, researching, pitching and creating commercials, advertising campaigns, and other content, including on product lines outside the pasture raised shell egg segment at issue in this case. *Id.* ¶ 7-8. Research conducted by Preacher for Vital Farms includes, *inter alia*, qualitative consumer research. *Id.* The Subpoena seeks confidential and highly sensitive documents implicating Vital Farms' trade secrets[4] or other confidential research, development, or commercial information. *Id.* ¶ 6, Ex. D. It is axiomatic that a company working with its agency to develop new ads engages in a confidential process that it would never expect to become public, except for final vetted language.

Nevertheless, the Subpoena demands production of documents unrelated to the pasture raised shell egg segment in the following demands:

> **Request No. 1**: Produce a copy of any and all documents concerning any surveys you conducted on behalf of Vital Farms.

---

[4] Research conducted by Preacher on behalf of Vital Farms constitutes trade secret because it is a compilation of commercial information not generally known to competitors that can be used to gain an advantage in the market. *Daniels Health Scis., LLC v. Vascular Health Scis., LLC*, 710 F.3d 579, 583 (5th Cir. 2013) (under Texas law, a trade secret includes "information which derives independent economic value from being not generally known or readily ascertainable through proper means").

**Request No. 2**: To the extent that they are not produced in response to prior requests, Produce a copy of any and all documents concerning the considered, proposed, or actual use of the terms or phrases "ethical," "ethically produced," "humane," "humanely produced," and/or "pasture raised" in Vital Farms' marketing, branding, packaging, press releases and/or advertising.

**Request No. 6**: Produce a copy of any and all agreements between you and Vital Farms concerning the services you provide or have provided to Vital Farms.

**Request No. 7**: Produce any and all documents concerning services relating to Vital Farms that you prepared or reviewed.

### III.     APPLICABLE LEGAL STANDARDS

A court may quash or modify a subpoena to protect a party affected by a subpoena upon a motion filed before the time for performance in the district in which compliance with the subpoena is required. *See* Fed. R. Civ. P. 45(d)(3)(A)-(B). "[A] party has standing to challenge a subpoena issued to a nonparty if the subpoena seeks confidential or protected information sensitive to the movant." *Swire v. Kempf*, 2020 U.S. Dist. LEXIS 82666, at **7-8 n.2 (W.D. Tex. May 11, 2020), citing *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979).[5]

"[T]he party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *Libaire v. Kaplan*, 760 F. Supp. 2d 288, 291 (E.D.N.Y. 2011). The burden then transfers to the party seeking to quash the subpoena to show "compliance with the subpoena would be 'unreasonable and oppressive . . . according to the facts of the case." *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004) (internal citations omitted). Courts consider the following factors in a motion to quash: (1) the relevance of the information requested; (2) the need of the party for the documents; (3) the

---

[5] A subpoena must be quashed where it requires disclosure of protected matter, if no exception or waiver applies. Rule 45(d)(3)(A)(iii). A subpoena may be quashed or modified where it seeks irrelevant information that discloses a "trade secret or other confidential research, development, or commercial information" (Rule 45(d)(3)(B)(i)) or where seeks an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party (Rule 45(d)(3)(B)(ii)).

breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed. *Id.*; *Mortera v. State Farm Fire & Cas. Co.*, 2021 U.S. Dist. LEXIS 123789 (D. Miss. Apr. 27, 2021) (applying *Wiwa* standard to subpoena challenged by an affected party).

Courts also hold that a Rule 26 protective order is warranted if a moving party demonstrates good cause and a specific need for protection. *See Areizaga v. ADW Corp.*, 314 F.R.D. 428, 434 (N.D. Tex. 2016); *Romac Env't Servs., LLC v. Wildcat Fluids, LLC*, 2022 U.S. Dist. LEXIS 99837, at **11-12 (W.D. La. June 3, 2022). The Court has broad discretion to determine whether to grant a motion for a protective order. *See Harris v. Amoco Prod. Co.*, 768 F.2d 669, 684 (5th Cir. 1985).

### IV. <u>ARGUMENT</u>

**A.** <u>The Subpoena Is Properly Quashed Or Modified Because It Seeks Irrelevant Confidential Information That Will Harm Vital Farms If It Is Produced</u>

Courts properly modify subpoenas to eliminate any sensitive information that is irrelevant to any party's claims or defenses – even if that party could not move to quash on the basis of relevance alone.[6] *See Pruitt v. K & B Transportation, Inc.*, 2022 U.S. Dist. LEXIS 88856 (S.D. Ill. May 17, 2022) (granting defendant's motion to quash plaintiff's subpoena to nonparty seeking irrelevant contracts where plaintiff the nonparty's services prodded by the subpoena are not relevant to the" underlying facts or defendant's knowledge); *Purugganan v. AFC Franchising, LLC*, 2021 U.S. Dist. LEXIS 205593, at *3 (D. Conn. Aug. 20, 2021); *Morelli v. Alters*, 2020 U.S. Dist. LEXIS 207362, at *17 (S.D.N.Y. Nov. 5, 2020); *Kyner v. Loveridge*, 2019 U.S. Dist. LEXIS 68500, at *2 (S.D. Ind. Apr. 23, 2019). It is improper for the subpoenaing party, absent a strong showing of need, to use discovery to conduct a fishing expedition for new claims. *Morelli*, 2020

---

[6] Vital Farms' standing is further expounded upon in Section IV.B, *infra*.

U.S. Dist. LEXIS 207362, at *1 (defendant cannot use nonparty subpoena to "engag[e] in a fishing expedition for evidence to support [] new [counter]claims"); *Indiana Materials Processing, LLC v. Tire Waste Transp., LLC*, 2015 U.S. Dist. LEXIS 48551, at *10 (N.D. Ind. Apr. 14, 2015).

Documents such as a party's correspondence with a nonparty, negotiations or contracts between a party and a nonparty, a party's business strategy, and documents describing services a nonparty provided to a party are precisely the types of "trade secret or other confidential research, development, or commercial information" that Rule 45 protects from disclosure, particularly where they are irrelevant to the claims or defenses in the action. *Romac*, 2022 U.S. Dist. LEXIS 99837, at **11-12 (quashing subpoena to a party's customer seeking sensitive financial documents and documents that would disclose the party's structure and its relationship with the subpoenaed customer); *DaVita, Inc. v. Scot Indus., Inc.*, No. CV 17-480, 2018 U.S. Dist. LEXIS 246704, at *20 (E.D. Tex. Dec. 3, 2018) (quashing subpoena seeking irrelevant "contract between defendants and [nonparty]," where the parties "strived to maintain" and did not waive its confidentiality); *IFG Port Holdings, LLC v. Lake Charles Harbor & Terminal Dist.*, 2017 U.S. Dist. LEXIS 236254, at **12, 16 (W.D. La. Nov. 28, 2017) (quashing subpoena requesting pricing strategies, negotiations with suppliers, and nonparty emails, which constituted sensitive business information that, if provided to a competitor, would be detrimental to its business).

Here, Plaintiffs are clearly using the Subpoena as a fishing expedition to seek otherwise protected confidential information not related to Vital Farms' eggs and the chickens that produce them, but related instead to different products (butter and ghee) derived from an entirely different species of animal (cows) and not mentioned a single time in the FAC. The documents sought by the Subpoena raise just this type of protectable privacy interest, including (a) ***any and all*** surveys conducted on behalf of Vital Farms, (b) ***any and all*** documents related to the use of various ethical or humane advertising terms, (c) ***any and all*** agreements between Preacher and Vital Farms

concerning services provided to Vital Farms, and (d) *any and all* documents concerning services related to Vital Farms prepared or reviewed by Preacher. These documents are all of the type that Vital Farms would never expect to become public – let alone end up in the hands of a competitor like PETA trying to get Vital Farms' customers to abandon Vital Farms' products.[7] None of the challenged document requests is limited to Vital Farms' egg product lines. Each is extremely broad and would include documents related to other product lines like butter or ghee. While Vital Farms recognizes the requests seek some relevant documents, it fails to see how Plaintiffs may obtain the highly confidential irrelevant documents.

Plaintiffs have asserted, and Vital Farms is aware of, no way in which the documents unrelated to eggs could be relevant to this action. None of the nine Plaintiffs allege purchasing any Vital Farms product except eggs. ECF No. 1 ¶¶ 15-23. If the Complaint included allegations regarding other product lines like butter and ghee, Vital Farms would have moved to dismiss them for lack of standing. Plaintiffs cannot now rely on vague Complaint phrases to somehow bring the other product lines within the scope of discovery. Vital Farms met and conferred with Plaintiffs regarding the overbreadth, but Plaintiffs provided no substantial need for documents unrelated to the production of eggs. Sones Decl. ¶ 10, Exs. F-H. Indeed, Plaintiffs refused to meet and confer with Vital Farms regarding these requests whatsoever, but noted that they would be willing to meet and confer over the scope of the requests with the subpoenaed parties. *Id.* This approach cements Vital Farms' understanding that Plaintiffs, and their partner PETA, are abusing the procedural mechanisms of third party subpoenas (and the limited rights of Vital Farms to prevent production

---

[7] The existing Confidentiality and Protective Order in the action cannot adequately protect Vital Farms against the harms caused by production of the irrelevant documents because PETA, which are in active competition to reduce Vital Farms' market share, is an entity related to Plaintiffs' counsel and actively involved in Plaintiffs' prosecution of this case. *See Romac*, 2022 U.S. Dist. LEXIS 99837, at *12 (protective order in the action would not alleviate anticipated harm where competitor was an expert in the case).

in response to those subpoenas) in order to engage in a fishing expedition for irrelevant documents, despite knowing that the documents are outside the scope of discovery in this case. *Id.*

**B.      Vital Farms Has Standing To Move To Quash The Nonparty Subpoena**

A party has standing to move to quash a nonparty subpoena if it infringes upon the movant's legitimate interests in the privacy or confidentiality of the information sought. *Romac*, 2022 U.S. Dist. LEXIS 99837, at **11-12 (granting defendant's motion to quash subpoena to nonparty seeking sensitive commercial documents); *Zamora v. GC Servs., LP*, 2017 U.S. Dist. LEXIS 77649, at *9 (W.D. Tex. Feb. 17, 2017) (granting plaintiff's motion to quash subpoena to nonparty based on plaintiff's legitimate privacy interest in documents sought). As set out above, Vital Farms has legitimate commercial confidentiality and privacy interests in the irrelevant documents sought by the Subpoena which will be threatened by a production of those documents to Plaintiffs, their counsel, and potentially PETA and the public. The direct implication of Vital Farms' confidentiality and privacy interests paired with the tangible threat of harm from a competitor involved in this action if the irrelevant documents are produced establishes standing for Vital Farms to make this Motion.

## V.      CONCLUSION

For the forgoing reasons, the Court issue an order (1) quashing or protecting Vital Farms against the Subpoena, or (2) modifying the Subpoena to exclude the sensitive information sought by Request Nos. 1, 2, 6, and 7.

*Respectfully submitted*,

Dated: November 22, 2022

SHEPPARD MULLIN RICHTER & HAMPTON LLP

By  /s/ Alyssa Sones
DWIGHT M. FRANCIS
Texas Bar No. 00785877
AIMEE C. OLESON
Texas Bar No. 24036391
2200 Ross Avenue, 20th Floor
Dallas, Texas 75201
Tel. (469) 391-7400
Fax (469) 391-7401
dfrancis@sheppardmullin.com
aoleson@sheppardmullin.com

P. CRAIG CARDON (admitted *pro hac vice*)
JAY T. RAMSEY (admitted *pro hac vice*)
BENJAMIN O. AIGBOBOH (*pro hac vice* application to be submitted)
ALYSSA SONES (admitted *pro hac vice*)
1901 Avenue for the Stars, Suite 1600
Los Angeles, California 90067
Tel. (310) 228-3700
Fax (310) 228-3701
ccardon@sheppardmullin.com
jramsey@sheppardmullin.com
baigboboh@sheppardmullin.com
asones@sheppardmullin.com

*Attorneys for Defendant*
VITAL FARMS, INC.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on November 22, 2022, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

/s/ Alyssa Sones