# Exhibit K

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| NICHOLAS USLER, ET AL., | § § § | |
| Plaintiffs, | § § | |
| vs. | § § | Civil Case No. 1:21-cv-00447-RP |
| VITAL FARMS, INC., | § § | |
| Defendant | § § § | |

## **PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO QUASH**

Plaintiffs Nicholas Usler, Jon Evans, Andrew Andrada, Alina Yurkovsky, Noah Tanz, Kenny Kiernan, Charles Sankowich, Burcu Karaca, and Kara Gozde, individually and on behalf of a proposed Class and/or Subclasses ("Plaintiffs"), file this Response to Defendant's Motion to Quash or, in the Alternative, for Protective Order Against Subpoena to Preacher LLC (Dkt. 56, the "Motion"), and respectfully state as follows:

# INTRODUCTION

This is a false advertising case. Plaintiffs subpoenaed relevant evidence from marketing firms responsible for the advertising at issue. None have objected. One of these firms has already produced highly relevant evidence. This motion concerns a nearly identical subpoena.

When the parties conferred regarding these subpoenas, Defendant raised *only* burden and relevance concerns. Confidentiality was unmentioned. Nor were concerns raised about complaint amendments based on non-egg products—sensibly, given Plaintiffs' references to complaint amendments were limited to facts revealing Defendant's noncompliance with a third-party certifier's *hen* welfare standards. Plaintiffs responded correctly: They would happily discuss the subpoena's scope with the third-party firms, but burden and relevance were inappropriate topics to negotiate with Defendant. Defendant immediately declared further meet and confer pointless, and filed the instant motion. Only there did Defendant introduce two entirely new premises for quashing or modifying the subpoenas. On this basis alone, the Court should deny Defendant's motion.

The motion should fail for several additional reasons. First, despite Defendant's numerous references to relevance, it does not have standing on this ground. In any event, Plaintiffs' requests are relevant and non-burdensome. And, contrary to Defendant's intimations, its late-breaking confidentiality concerns do not support non-production. Finally, Defendant's aspersions on opposing counsel are offensive—and do not support the relief sought.

# BACKGROUND

A.  **Nature of the Case**

Plaintiffs allege Defendant misrepresents its treatment of chickens as "pasture raised," "humane," and "ethical," while engaging in practices that subject chickens to unnecessary

1

suffering. *See, e.g.*, Dkt. 1 at ¶¶ 2–6, 39; Dkt. 26 at 2. These include confining hens at injurious densities (preventing access to pasture), condoning beak cutting and maceration, and selling prematurely "spent" hens for slaughter. *See, e.g.*, Dkt. 1 at ¶ 46; Dkt. 26 at 2.

### B. Discovery to Date

Following the court's order denying Defendant's motion to dismiss—explaining that Defendant "plainly, and perhaps purposefully, misse[d] the gravamen of Plaintiffs' claim," Dkt. 26, at 6-13—Plaintiffs pursued discovery diligently. On July 18, 2022, Plaintiffs served requests for production on Defendant, to which Defendant has barely responded.[1] That month, Plaintiffs also subpoenaed Defendant's third-party certifier, Humane Farm Animal Care ("HFAC"). *See* Declaration of Asher Smith ("Smith Decl."), ¶ 9.

HFAC responded in September. Its documents reveal, among other violations of HFAC standards:



*See* Smith Decl., ¶ 10-13. Given this "egregious history of noncompliance with HFAC standards," Plaintiffs told Defendant these documents "will be central to adjudicating the merits of [Plaintiffs'] present claims, and likely justify further Complaint amendments" on that basis.[2] Dkt. 56-5, at 14-15. Neither Plaintiffs nor Plaintiffs' counsel expressed any intent to amend or bring new claims regarding other products.

---

[1] Although Defendant misleadingly highlights the number of internal documents it has *reviewed* in the ensuing half year of discovery, it does not explicitly state the actual number of documents it has produced: only 375, consisting largely of publicly available publications. Dkt. 56-9, at 3.
[2] This explanation was prompted by Defendant's efforts to keep this information off the docket. Although these documents relate almost entirely to HFAC audits Defendant has presented as

2

In addition to HFAC, Plaintiffs subpoenaed third-party firms that created advertisements at issue. Dkt. 56-6, at 2-34. One firm, Zocalo Design & Advertising, Inc. ("Zocalo"), responded promptly, producing all requested documents without any objection. Smith Decl., ¶ 17. Among other relevant evidence, Zocalo produced information showing that ▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, and evidence that Defendant's consumers define these concepts in the same terms as Plaintiffs. *Id.* at ¶¶ 18-19.

C.   **The Subpoena at Issue**

Plaintiffs served a nearly identical subpoena on Preacher, LLC ("Preacher"), *see* Dkt. 56-6 at 16, given Plaintiffs' knowledge of a Preacher publication concerning Defendant's "BULLSH*T FREE EGGS" advertising campaign, *see* Case Study: Bullsh*t Free Eggs, preacher.co, https://preacher.co/work/vital-farms (last visited Nov. 23, 2022) ("Case Study"). According to that Case Study, Defendant tasked Preacher with "grow[ing] a customer base" consisting of "[w]ell-meaning egg-lovers [who] had been duped by an empty phrase: 'cage-free.'" *Id.* To that end, Preacher built a campaign to "show[] the pasture-raised difference." *Id.* A prominent tagline, "Give A Girl Some Space," appears over an image of hens frolicking outdoors. *Id.* Other text claims that Defendant gives hens "everything they need," "plenty of space," and "let[s] [its] girls spend their days soaking up sunshine and grazing on grass"— compared to hens who "never even go outside." *Id.* Preacher extols their success in convincing consumers that hens raised by Defendant lead natural lives outdoors, quoting consumers. *Id.*

---

dispositive of Plaintiffs' claims, *see* Dkt. 17, at 11, Defendant designated HFAC's *entire* production "confidential." Dkt. 56-5, at 16. This contravenes the protective order, which bars "blanket protections on all disclosures of responses to discovery" and requires designations be based on a "good faith belie[f]" that "the limited information or items" "in fact is confidential." Dkt. 51, at 1, § 3.a. Plaintiffs fear Defendant aims "to prejudice Plaintiffs by keeping information about Defendant's animal welfare record . . . hidden under seal." Dkt. 56-5 at 6.

3

In other words, Preacher celebrates its role in creating marketing central to this lawsuit. The Case Study's only mention of Preacher's work supporting other product lines is a glancing reference, in a video promoting "ethically sourced egg bites," to "humanely raised meats and cheeses from pasture raised cows." *See* Case Study (repeating alleged falsehoods about hens freely "roam[ing] around on pastures.").

### D. Defendant's Abrupt Meet and Confer

Defendant wrote to Plaintiffs regarding these subpoenas on November 8, 2022. Dkt. 56-8, at 2. It raised relevance and potential burden to nonparties. *Id.* at 2-3. It did not refer to any confidentiality, privacy, or trade secret concerns. *Id.* at 2-4. Nor to any concern that discovery could be used to broaden the lawsuit. *Id.*

Plaintiffs responded, explaining Defendant could not "determin[e] what constitutes an undue burden to these witnesses," nor "could [it] assert such an objection on their behalf." Dkt. 56-9, at 3. Plaintiffs stated they would be "willing to discuss the scope of these requests with these witnesses to the extent that they assert reasonable objections." *Id.* at 2. Defendant declared further conferral pointless less than 40 minutes later. Dkt. 56-10, at 2.

## ARGUMENT

### I. Defendant's Failure to Confer in Good Faith Violates Federal and Local Rules

Defendant's motion objects to Plaintiffs' subpoena on two grounds: (1) that it "signal[s] [Plaintiffs'] intent to use discovery to broaden claims against Vital Farms," Dkt. 56-1 at 6; and (2) that the subpoena "seeks confidential and highly sensitive documents implicating Vital Farms' trade secrets," *id.* However, Defendant *never* raised these concerns in meet and confer correspondence, *see* Dkt. 56-8, and its failure to do so violates Federal Rules of Civil Procedure 26 and 45, and Local Rule CV-7.G. For this reason alone, Defendant's motion must be denied.

4

Federal Rules 26(c) and 45, and Local Rule CV-7.G, require a discovery motion to certify the movant made a good-faith attempt to resolve any disputed issues by agreement and to enumerate specific reasons an agreement could not be reached. *See* Fed. R. Civ. P. 26(c); Local Rule CV-7.G; *Garcia v. El Paso Tchrs. Fed. Credit Union*, 2021 WL 2784561, at *2 (W.D. Tex. Jan. 21, 2021). This Court has held the "good faith" standard "requires a genuine effort to resolve the dispute without seeking the Court's intervention." *Rodriguez v. Allstate Fire & Cas. Ins. Co.*, 2019 WL 13150017, at *1 (W.D. Tex. Dec. 23, 2019) (cleaned up).

Defendant's motion flouts this standard. Defendant's purported concern about Plaintiffs using discovery to "broaden claims against Vital Farms" to encompass non-shell egg products, Dkt. 56-1 at 6, appeared for the first time in its motion, *see* Dkt. 56-8, 56-10. Had Defendant sought to "genuinely discuss" this issue, *Rodriguez,* 2019 WL 13150017, at *1—as required— Plaintiffs could have reiterated what should have been obvious: that referenced discussion of "Complaint amendments," *see* Dkt. 56-5 at 6, 12, 15, referred *solely* to Plaintiffs' claims concerning Defendant's treatment of chickens and its advertising of eggs.[3] While the meaning of Plaintiffs' references to "Complaint amendments" was apparent from the surrounding context— these references were explicitly grounded in Defendant's newly-revealed "egregious history of noncompliance" with HFAC's laying hen welfare standards[4]—Defendant's purported concern

---

[3] Defendant's newfound concern about "expanding claims" is especially odd given long-standing principles that "discovery often justifies a subsequent amendment to the complaint," while "an amendment should [not] be permitted" if it causes "the injection of any new issues" that would prejudice the defendant. *Rodriguez v. Ridge Pizza Inc.*, 2018 WL 1335358, at *11 (E.D.N.Y. Mar. 15, 2018).

[4] Counsel for Plaintiffs have completed their review of the HFAC documents and are not aware of documents that bear substantively on Defendant's care of animals other than chickens. Smith Decl., ¶ 14. Defendant admits that requests to HFAC were "narrowly tailored to the relevant issues in this case related to the treatment of chickens." Dkt. 56-1, at 5. If documents concerning other animals are in the HFAC production, this is further evidence that some documents encompassing Defendant's other product lines may be relevant to this case.

5

about new claims regarding other products derived from different animals "could have been resolved had the parties *meaningfully* conferred." *Diaz v. Cuatro T Constr., Inc.*, 2021 WL 2709681, at *1 (W.D. Tex. Mar. 19, 2021) (cleaned up). This is precisely "why Local Rule [CV-7.G] exists"—and why "the parties are expected to comply with the Court's Local Rules." *Id.*

The same is true regarding confidentiality. It is not Plaintiffs' responsibility to predict objections. *See* Dkt. 56-8, 56-10. When a party "file[s] their Motion to Quash without further speaking with [opposing] counsel to address *any* of its current objections," a court may deny relief "[o]n this ground alone."[5] *Garcia*, 2021 WL 2784561, at *1.

## II. Defendant's Relevance Complaints Are Improper and Unavailing

As explained, had *Preacher* objected to requests as disproportionate or burdensome, Plaintiffs would have conferred in good faith and, if appropriate, forgone certain discovery. Dkt. 56-9, at 2.[6] But *Defendant* cannot argue the subpoena "is overly broad, or . . . seeks information that is irrelevant because only the responding third party can object and seek to quash a Rule 45 subpoena on those grounds." *Bounds v. Cap. Area Fam. Violence Intervention Ctr., Inc.*, 314 F.R.D. 214, 218 (M.D. La. 2016).

---

[5] Defendant also fails to "certify the specific reason[s] that no agreement could be made" about the objections in its motion. Local Rule CV-7.G. In fact, Defendant made no attempt whatsoever to resolve the disputes it now brings before the court. *Compare* Dkt. 56-10 (conveying Defendant's understanding of Plaintiffs' position and, without further explanation or effort to address any concerns, stating that Defendant would "proceed with a motion"), *with BCOWW Holdings, LLC v. Collins*, 2017 WL 4082686, at *3 n.2 (W.D. Tex. Sep. 15, 2017) (a party who merely inquires whether the nonmovant will oppose a motion, rather than attempts to resolve a dispute in good faith, does not satisfy the meet and confer obligation).

[6] Although Plaintiffs believe this motion lacks basis, should this Court disagree, Plaintiffs request it adhere to the principle that "modification of a subpoena is preferable to quashing it outright," *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004), and modify the subpoena only to the extent it seeks records pertaining to non-egg products.

In any event, Plaintiffs' subpoena is tailored to discover relevant documents: those concerning Defendant's "treatment of chickens" and its usage of critical terms like "humane," "ethical," and "pasture raised." Dkt. 56-6 at 18. It requests information on the "factors" Defendant considers "determinative of customer choices" and "customer concerns in consumer surveys." *Robroy Indus.-Texas, LLC v. Thomas & Betts Corp.*, 2017 WL 319064, at *3 (E.D. Tex. Jan. 23, 2017) (allowing discovery related to a nonparty marketing firm). To the extent it encompasses Defendant's non-egg products at all, it focuses on "substantially similar" features that bear on liability. *United Oil Co. v. Parts Assocs., Inc.*, 227 F.R.D. 404, 416–17 (D. Md. 2005).

These limitations reflect Preacher's role in this case. Preacher designed advertising campaigns around Defendant's animal care practices, including the degree and duration of outdoor access provided to hens. *See* Case Study (campaigns extolling "plenty of space," unlike operations in which hens "never even go outside"). Moreover, Preacher touts its success in designing campaigns based on consumer reactions to Defendant's animal welfare claims.[7] *Id.* Plaintiffs, absent any elaboration from Defendant or Preacher, cannot predict what portion of Preacher's work concerns product lines other than shell eggs. Indeed, it has every reason to assume, based on the Case Study, that any such work is inextricably linked with Defendant's advertising about laying hens, and likely to share many elements with the latter. *See* Case Study (advertisement drawing parallels between Vital Farms' treatment of animals raised for eggs, meat, and dairy). As the Case Study and responses to the nearly identical Zocalo subpoena

---

[7] Plaintiffs expect the Preacher subpoena to yield documents similar to those produced by Zocalo and HFAC, e.g., ███████████████████████████████████ ¶ 19, and that consumers understand "humane" and "ethical" to connote the absence of maceration, beak cutting, needless barriers to outdoor access, and sale of prematurely "spent" hens for industrial slaughter, *id.* ¶¶ 16, 18, 20.

7

demonstrate, *see* Smith Decl., ¶¶ 19-20, Plaintiffs' choice to target Preacher documents concerning the terms "ethical," "humane," and "pasture raised," Dkt. 56-6, at 18, renders the subpoena appropriately tailored to yield relevant information about consumer expectations and Defendant's knowledge of falsity.

**III.    Defendant's New Confidentiality Concerns Do Not Justify Quashal or Modification**

Defendant's new concerns about confidentiality do not justify the relief sought. Even were the subpoena to encompass confidential information,[8] "the sensitive nature of [subpoenaed] material does not mean it is irrelevant and not discoverable." *Robroy Indus.-Texas*, 2017 WL 319064, at *3. As explained, Plaintiffs expect to discover relevant evidence. This distinguishes this case from others concerning private financial data, personnel files, or similarly sensitive records that were genuinely irrelevant to contested issues. *See* Dkt. 56-1, at 8-9.

Far more instructive is *Vermeer Mfg. Co. v. Toro Co.*, 2020 WL 1236312 (W.D. Okla. Mar. 13, 2020). There, a nonparty moved to quash and for a protective order when plaintiff, a direct competitor, sought, *inter alia*, "[a]ll market studies, consumer surveys, focus group results, reports, and presentations relating to customer interest in, or demand for" a relevant product type. *Id.* at *3. "[A]ccepting that confidential information [was] involved," the court nonetheless

---

[8] The trade secrets definition Defendant quotes, Dkt. 56-1 at 6 n.4, does not appear in *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579 (5th Cir. 2013). *Daniels* does, however, require that courts weigh, *inter alia*, "the extent to which [the information] is known by . . . others involved in the business" and "the ease or difficulty with which the information could be properly acquired or duplicated by others." 710 F.3d at 583. Consumer interest in humane animal products is well known, *see, e.g.*, Dkt. 1-1, and information highlighted by Preacher's Case Study, such as depictions of particular farms and use of consumers' social media reactions, is not closely held. *See Allen v. PPE Casino Resorts Maryland, LLC*, 543 F. Supp. 3d 91, 93 (D. Md. 2021) ("social media content" is not "protected by any right of privacy"). Likewise, based on its prior submissions, Defendant cannot argue that information in Preacher's possession about its animal care practices is confidential. *See* Dkt. 17, at 11 (stating its "practices are made clear on the face of every package of Vital Farms' eggs").

8

denied the nonparty's motion to quash because plaintiff had demonstrated that the information sought was "relevant to establishing" its damages theory. *Id.* at *5. The court also denied the nonparty's request for a protective order since a preexisting protective order already allowed "third parties producing documents in the course of this action [to] designate documents as 'Confidential.'" *Id.* at *7. A similar result should obtain here.[9]

### IV. The Identity of Plaintiffs' Co-Counsel is Irrelevant to This Inquiry

Defendant cannot hide evidence based on "inferences" or "suspicions" about Plaintiffs' counsel. *Cf. PACid Grp., LLC v. Apple, Inc.*, 2010 WL 10094684, at *6 (E.D. Tex. Feb. 19, 2010). Especially here, where PETA Foundation counsel was retained for their issue area expertise, Smith Decl., ¶ 6, and where Defendant would "limit [a plaintiff's] ability to benefit from the full measure of the expertise for which counsel is hired,"[10] *PACid Grp., LLC*, 2010 WL 10094684 at *5 n.10. Arguments relying "on a general assumption that one group of lawyers are more likely . . . to breach their duty under a protective order" cannot support a request for a protective order, let alone a motion to quash.[11] *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984).

---

[9] Defendant protests that Plaintiffs' objections to Defendant's designation of certain documents "increase[s] [Defendant's] risk . . . in any new confidential documents produced by nonparties." Dkt. 56-1, at 6. But Defendant elides Plaintiffs' argument that the documents at issue fall under § 3.d of the Protective Order. *See* Dkt. 56-5, at 5-6. Plaintiffs believe their approach of identifying and reserving arguments—rather than Defendant's approach of raising arguments for the first time in motion practice—is the minimum required by Federal and Local Rules. *See supra* Part I.

[10] In *PACid Group*, counsel had "unique expertise in . . . licensing arrangements." 2010 WL 10094684, at *5. PETA Foundation counsel's expertise is similarly specialized. Smith Decl., ¶ 6.

[11] The PETA Foundation lawyers currently appearing in this case are members of their state bars in good standing, have been admitted pro hac vice, and conduct themselves at all times in accordance with applicable case management and protective orders, as well as applicable ethical codes. Smith Decl., ¶ 7. Each practiced at large firms prior to joining the PETA Foundation, which is a distinct corporate entity from PETA, a nonparty. *Id.* ¶ 3. As PETA Foundation litigators, they operate similarly to entities associated with advocacy nonprofits. *Id.* ¶ 4; *see also, e.g.*, AARP

9

Defendant's arguments otherwise are premised on misrepresentations. For example, Defendant wrongly attributes statements made by Edmundson Shelton Weiss LLC counsel to PETA Foundation counsel. *Compare* Dkt. 56-1, at 3 ("The PETA Foundation lawyer . . . [said] he would only negotiate scope with the subpoenaed parties"), *with* Dkt. 56-9 (correspondence from Edmundson Shelton Weiss counsel). Moreover, Defendant's *only* evidence that Defendant is a "principal target of PETA," Dkt. 56-1, at 5 n.3, is an article on PETA's website that reports on Plaintiffs' allegations (as such) and states that "PETA Foundation Lawyers Help[ed] File [this] Class Action Lawsuit."[12] Dkt. 56-7, at 2. The situation is distinct from precedent cited by Defendant, in which a protective order was insufficient because one party, a for-profit competitor, used its own vice president as its only expert witness. *Romac Env't Servs., LLC v. Wildcat Fluids, LLC*, 2022 WL 1924106, at *4 (W.D. La. June 3, 2022). The comparison falls apart completely given PETA's apparent lack of advocacy about Vital Farms beyond reporting on this lawsuit. Smith Decl., ¶ 8.

## CONCLUSION

Plaintiffs respectfully request that the Court deny Defendant's Motion.

---

Foundation, What We Do: Legal Advocacy, https://www.aarp.org/aarp-foundation/our-work/legal-advocacy/ (last viewed Jun. 13, 2022). They do not discuss case strategy or tactics, or share discovery, with PETA except as may be necessary to the conduct of cases in which PETA itself is a party or recipient of discovery requests. *Id.* ¶ 5. The suggestion they are using Plaintiffs as "unsuspecting proxies" is unfounded—and deeply offensive. Dkt. 56-1, at 4-5.

[12] Defendant's arguments are all the more strained given that PETA, while a separate nonparty, is also not a "competitor" engaged in commercial "advertising." *See* Dkt. 56-1, at 4, 10. Rather, it is a nonprofit organization engaged in what Defendant concedes is a non-commercial "advocacy mission." Dkt. 56-1, at 5. Whatever Defendant may think of PETA's mission, such advocacy is pure First Amendment-protected speech—not commercial advertising. *See New York Times Co. v. Sullivan*, 376 U.S. 254, 266 (1964).

10

Dated: December 16, 2022                      Respectfully submitted,

**EDMUNDSON SHELTON WEISS PLLC**

By: */s/ Jesse Z. Weiss*
Jesse Z. Weiss (SBN: 24013728)
Ryan Shelton (SBN: 24037484)
317 Grace Lane, Suite 210
Austin, Texas 78746
Telephone: (512) 596-3058
Facsimile: (512) 532-6637
Email: jesse@eswpllc.com
ryan@eswpllc.com

**LAW OFFICES OF RICHARD L. STONE, PLLC**
Richard L. Stone (admitted pro hac vice)
11 East 44th Street, Suite 1900
New York, New York 10017
Telephone: (561) 358-4800
Email: rstoneesq@rstoneesq.com

**PETA FOUNDATION**
Asher Smith (admitted pro hac vice)
Caitlin Hawks (admitted pro hac vice)
Jeffrey Stein (pro hac vice application forthcoming)
1536 16th Street, NW
Washington, DC 20036
Telephone: (202) 483-7382
Email: AsherS@petaf.org

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I do hereby certify that on December 16, 2022, a true and correct copy of the above and foregoing instrument was filed electronically through the Court's CM/ECF system, which will give notice of this filing to all parties.

                                             */s/ Jesse Z. Weiss*

11

Jesse Z. Weiss

12